In the matter of the PATERNITY OF IC, Minor Child:

KC, Appellant (Respondent),

v.

KJM, Appellee (Petitioner).

No. C-97-8.

Supreme Court of Wyoming.

Jan. 11, 1999.

KC, Pro Se.

Fred R. Dollison of Northern Wyoming Law Associates, Sheridan, Wyoming, Representing Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

TAYLOR, Justice, Retired.

Mother appeals the district court's Nunc Pro Tunc Order for Visitation and Child Support, contesting the district court's determination of visitation, child support, costs, and attorney's fees. The district court did not abuse its discretion in reaching its decision, and we affirm.

## I. ISSUES

Appellant, KC (Mother), submits the following for review:

Did the district court abuse its discretion in its decisions regarding visitation, child support, and attorney fees?

Appellee, KJM (Father), responds:

1. Whether the district court abused its discretion in awarding visitation.
2. Whether the district court abused its discretion in setting child support amounts.
3. Whether the district court abused its discretion in disallowing Appellant's claims for back child support.
4. Whether the district court abused its discretion in confirming its earlier award of attorney's fees.

## II. FACTS

The child at the center of this dispute is IC, an eight-year old who lives with Mother in Laramie, Wyoming. Father lives in New York. We first considered this matter in *In re Paternity of IC,* 941 P.2d 46 (Wyo.1997). There, we affirmed the district court's order establishing paternity in Father, but reversed the visitation ruling because it was unsupported by evidence relating to the best interests of the child. *Id.* at 52–53.

Upon remand, the district court appointed a new guardian ad litem, and authorized the guardian ad litem to travel to New York to visit Father, his parents and his girlfriend, and to investigate the environment for visitation. After this investigation was completed, a hearing was conducted by the district court to determine a visitation schedule tailored to IC's best interests. The district court found that Father was entitled to reasonable visitation, but that Mother had denied visitation access and had continually interfered with Father's efforts to establish a relationship with IC. Consequently, the district court determined that it was in IC's best interests to develop a relationship with Father outside of the presence of Mother.

The district court awarded Father liberal visitation with IC in New York as well as Wyoming, on a graduated, age-based scale. Father was ordered to pay $270.00 per month child support, a $25.00 per month

* Chief Justice at time of expedited conference; retired November 2, 1998.

downward deviation from the statutory guidelines due to Father's insurance and travel costs. The district court also ordered Mother to pay $1,000.00 toward Father's attorney's fees and reimburse Father for the cost of the genetic testing used to establish paternity. Additionally, the district court held that child support money, paid by Father but held by Mother's counsel pending this decision, be used to pay for the guardian ad litem's investigation. Finally, the district court limited Father's obligation for back child support to $800.00, representing the amount of checks that were sent to Mother but not timely cashed. This appeal followed.

## III. STANDARD OF REVIEW

In custody and visitation matters, paramount consideration must be given to the welfare and needs of the child. *Reavis v. Reavis*, 955 P.2d 428, 431 (Wyo.1998); *In re Paternity of IC*, 941 P.2d at 52 (*quoting Rowan v. Rowan*, 786 P.2d 886, 890 (Wyo. 1990)). "The determination of the best interests of the child is a question for the trier of fact." *Reavis*, 955 P.2d at 431. Therefore, the district court's decision will not be overturned by this court unless we are persuaded that there was an abuse of discretion by the district court. *Id.* (*quoting Fink v. Fink*, 685 P.2d 34, 36 (Wyo.1984)); *In re Paternity of IC*, 941 P.2d at 52 (*quoting Fink*, 685 P.2d at 36). " ' "A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances * * *." *Deen v. Deen*, 774 P.2d 621, 622 (Wyo.1989).' " *Pinther v. Pinther*, 888 P.2d 1250, 1252 (Wyo.1995) (*quoting Uhls v. Uhls*, 794 P.2d 894, 896 (Wyo.1990)).

" 'Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.' " *Sorensen v. May*, 944 P.2d 429, 432 (Wyo.

1997) (*quoting Martin v. State*, 720 P.2d 894, 897 (Wyo.1986)). Therefore, the ultimate standard is whether or not the court could have reasonably concluded as it did. *State, Dept. of Family Services v. PAJ*, 934 P.2d 1257, 1260 (Wyo.1997). Under the abuse of discretion standard, this court must view the evidence in the light most favorable to the determination which was made by the district court. We give the prevailing party all favorable inferences and do not consider the evidence presented by the unsuccessful party. *Reavis*, 955 P.2d at 431.

## IV. DISCUSSION

### A. VISITATION

Mother asserts that the district court's award of visitation to Father is not in the best interests of the child in light of the evidence presented at the October 6, 1997 hearing. Mother first takes issue with the district court's finding that Father attempted to establish a relationship with the child, but his efforts were thwarted by Mother. This finding, however, is amply supported by the record.

At the hearing, Mother frankly admitted that she simply did not want Father to be a part of IC's life. Mother also acknowledged that she moved from Sheridan, Wyoming to Laramie in 1996 without notifying Father or the district court. The report submitted by the guardian ad litem [1] contains further evidence of Mother's resistance to Father's involvement with IC:

> [Father] related the history of his relationship with [Mother]. * * * [Father] got a call from Alaska telling him she was pregnant. [Mother] came back to New York and they both went to Laramie, Wyoming where [Mother's] brother lived because she wanted to have the baby there. There was no work in Wyoming and they were both collecting unemployment. When the unemployment was about to run out, they went back to New York. [Moth-

---

1. In this case, the district court appointed a CASA (Court Appointed Special Advocate) volunteer to act as the guardian ad litem. The guardian ad litem was not appointed to act as an attorney for IC, and, therefore, the submission of a report and her testimony at the hearing was not contrary to our holding in *Clark v. Alexander*, 953 P.2d 145, 154–55 (Wyo.1998). Moreover, the parties stipulated to the submission of the guardian ad litem's report into the hearing record.

er] wanted to get her teaching certificate, so she went back to Laramie to go to college. [Father] visited her there for a while and took care of [IC] while she was in school. The next summer [Mother] went back out to New York until she was called for a job at the Girl's School.

[Father] states that in March of 1993 he called to arrange a time to come out and visit but was told that it was not a good time, so he didn't come out. He said he continued to make phone contact and suggest a visit, but that [Mother] would always have some excuse why he shouldn't come. He says that finally, in the summer of 1994, he just came out and called when he got to Cheyenne to make arrangements to visit. He says he was again told that it wasn't a good time because [Mother] had an Aunt visiting and then she had to go to a concert. [Father] states that he came to Sheridan anyway and called her but she wouldn't tell him where she lived. [Mother] brought [IC] to visit him at the motel and they went out to eat.

Mother's attitude about Father's relationship with IC is illustrated by the following exchange at the hearing:

Q. [By Father's attorney] Does [Father] have any rights here?

A. [Mother] Yes, he does.

Q. Does he have a right to see his son?

A. If, you know, I * * *

Q. Answer the question, please.

* * *

A. No. Personally * * *

Q. Thank you. That's your answer.

A. Personally, I don't think so.

This evidence is sufficient to support the district court's conclusion that IC's relationship with his Father may be best actuated by allowing Father time alone with IC.

 Mother also contends the district court "ignored the hazards posed by [Father's] alcoholism * * *, smoking, lack of stability * * *, and lack of personal relationship to the child." Mother's allegation regarding Father's claimed shortcomings, however, was amply contradicted by the evidence submitted by Father and the guardian ad litem. The guardian ad litem testified that after home visits and interviews with Father's girlfriend, his family, and interviews with his work associates, she had no objection to Father enjoying liberal visitation with IC, including visits to New York. The guardian ad litem also testified that neither Father's home, nor Father's parents' home, smelled heavily of smoke, and that no safety or other issues of concern were found. No evidence, other than Mother's accusations, demonstrated Father was currently a heavy drinker or had been an alcoholic.

Mother concludes that the district court failed to consider the best interests of the child. Again, this charge is contradicted by the record. Both the guardian ad litem and Father provided testimony as to the atmosphere of Father's home and other children who would be available for IC to play with. Father testified that he had voluntarily limited his summer visitation in 1996 due to the child's young age, and that he was willing to be flexible regarding visitation in the future.

A review of the record discloses substantial evidence supporting the district court's conclusion that it was in IC's best interests to develop a relationship with Father through the visitation schedule ordered by the district court. Thus, the district court's visitation order is affirmed.

### B. CHILD SUPPORT

 Mother next claims that the district court's decisions concerning child support are arbitrary, capricious, and an abuse of discretion. We disagree. Mother testified that she voluntarily left her four-year teaching job and was now a second-year law student with zero income. Thus, the district court could reasonably find that Mother was voluntarily unemployed and, therefore, impute her income from prior years based on her 1995 Financial Affidavit. Wyo. Stat. § 20–6–301(a) (Repl.1994).

 Father's income was predicated upon exhibits showing his average income for the last five years. The district court appropriately applied Wyo. Stat. § 20–6–302(b) (Repl.1994) to deviate $25.00 downward from the statutory support guidelines in consideration of transportation costs, health insur-

ance and imputed income when determining child support under the statutory guidelines. *See Dowdy v. Dowdy,* 864 P.2d 439, 441 (Wyo.1993) (district court has broad discretion in determining the amount of child support) and *Holtz v. State ex rel. Houston,* 847 P.2d 972, 976 (Wyo.1993) (guidelines are only guidelines, and as a matter of policy, this is within the district court's discretion).

■ The district court's order regarding back child support is also supported by substantial evidence. "The court, as it deems just, may limit the father's liability for past support of the child to the proportion of the expenses already incurred." Wyo. Stat. § 14–2–113(d) (Repl.1994). Mother submitted a summary of expenses incurred on behalf of IC in the amount of $11,892.02. Father submitted evidence that prior to the determination of custody, he paid Mother at least $6,200.00 in child support and maintained health insurance for IC. When Mother requested that Father put the money in a college fund rather than sending support, he complied.

After the initial decision affirming Father's paternity, Mother did not timely cash all the checks sent by Father for support. By the time Mother decided to present the checks, Father's account was closed. Thus, the district court ordered only the amount represented by the uncashed checks to be paid in back child support.

The district court's discretionary rulings on past and future child support are well supported in the record. Therefore, we will not disturb the district court's holdings.

### C. Attorney's Fees

■ Finally, Mother asserts the district court abused its discretion in awarding Father $1,000.00 in attorney's fees for the period prior to the paternity decision and the cost of genetic testing used to prove paternity. "In reviewing the award of attorney fees, we have recognized that the district court has extremely broad discretion with which we will not interfere except upon proof that such discretion was gravely abused." *In re Paternity of IC,* 941 P.2d at 53; *see also*

*Haltom v. Haltom,* 755 P.2d 876, 879–80 (Wyo.1988).

■ In paternity cases, the district court's authority to order the payment of reasonable attorney's fees and costs for pretrial proceedings, such as genetic testing, is clear:

> The court may order reasonable fees of counsel, experts and the child's guardian ad litem, and other costs of the action and pretrial proceedings including genetic tests, to be paid by the parties in proportion and at times determined by the court.

Wyo. Stat. § 14–2–114 (1997). At the October 1997 hearing, Mother admitted she never really doubted Father's paternity, yet she denied the paternity from the date of Father's original petition. Given the costly and unwarranted financial consequences of Mother's denial of paternity, we find no abuse of the district court's discretion in determining that Mother should pay part of those fees.

### V. CONCLUSION

The district court did not abuse its discretion in determining visitation, establishing child support, or in awarding attorney's fees and costs. Therefore, the Nunc Pro Tunc Order for Visitation and Child Support issued by the district court is affirmed.