2003 WY 95
**Becky E. DURHAM, Appellant (Plaintiff),**

v.

**Brian DURHAM, Appellee (Defendant).**

No. 02–130.

Supreme Court of Wyoming.

Aug. 19, 2003.

Representing Appellant: Greg L. Goddard of Goddard, Wages & Vogel, Buffalo, Wyoming.

Representing Appellee: DaNece Day Koenigs of Lubnau, Bailey & Dumbrill, P.C., Gillette, Wyoming.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] The district court granted the parties a divorce, awarded primary custody of the parties' two children to Becky E. Durham (mother), and ordered Brian Durham (father) to pay child support. In this appeal, mother challenges the district court's child support order, claiming the district court abused its discretion in imputing to her gross income of $35,000 per year, equal to a salary she earned in Virginia in 1992. She contends the district court's imputation of income is not supported by the record because there is no evidence regarding whether mother could earn such a salary in Gillette, Wyoming, where she now resides. Mother also claims the district court abused its discretion in allocating the expense of travel for visitation. We agree with mother that the record does not support the district court's imputation of income. We reverse and remand for further proceedings.

## ISSUES

[¶ 2] The parties generally agree on the following issues:

1. Whether the District Court erred when it imputed [to mother] $35,000.00 gross annual income for purposes of calculating [mother's] child support contribution?

2. Whether the District Court erred when it ordered [mother] to pay all of the reasonable and necessary travel expenses for the parties' children to visit [father] twice per year for 2003 and beyond and/or deviated from the presumptive child support guidelines because of [father's] difficulty and expense of visitation travel?

## FACTS

[¶ 3] The parties were married on September 19, 1992. During the marriage, the parties made their home in Alexandria, Virginia. Throughout the course of the marriage, father was employed by Navy Sea Systems Command. At the time of the marriage, mother was employed by American Express, where she earned $35,000 in 1992, the last year she worked for that entity. After the parties married, mother's employment with American Express ended, and she became a homemaker and worked part time for the parties' church. Mother earned, on average, between $10,000 and $12,000 per year. Two daughters were born of the marriage, the first on April 28, 1997, and the second on November 18, 1998. Eventually, irreconcilable differences developed.

[¶ 4] The parties separated around October 28, 1999. During that week, while father was out of the country on a work assignment, mother left the marital home without notifying father, taking the children with her. Mother and the children moved from Virginia to Gillette, Wyoming, where they took up residence with mother's parents. After settling in Gillette, mother began teaching piano lessons, performing piano accompaniments, and teaching music lessons to children. In the year 2000, mother grossed approximately $7,000 from those and her other endeavors.

[¶ 5] Mother filed for divorce, in Campbell County, in May of 2000. The district court held a two-day divorce trial on December 21–22, 2000, and issued a decision letter on January 29, 2001. The district court awarded mother the primary care, custody and control of the parties' children. Father was granted visitation and ordered to pay child support. With respect to child support, the decision letter provides:

*Child Support:* The court finds that [mother] is intentionally underemployed. By her own testimony she is but a few hours away from an MBA and in her last year of full-time employment, 1992, made

$35,000. She is now employed teaching music to children, which, while a commendable endeavor, is not one that adequately meets her earning potential and accompanying benefit to the minor children. [Mother] chooses this course. The court imputes annual gross income to [mother] at $35,000 per year. The court imputes [mother's] net monthly income at $2,383, after appropriate deductions.

* * * *

[Father's] net monthly income is $5387. The parties total child support obligation to the children is $1590. Under the Child Support Guidelines, [father's] share of the support obligation is $1105. However, given the distance that [father's] children now reside from him, and the difficulty and expense of visitation, the court finds that a deviation from the guidelines is appropriate and, therefore assesses an obligation of $450 per month per child for a total of $900 per month, commencing February 1, 2001. W.S. § 20–6–302(b)(vii).

[¶ 6] With respect to expense of travel for visitation, the decision letter also noted that "[g]iven the substantial distance of the parties from one another, occasioned by [mother's] move, and the ages of the children the court finds that special considerations concerning travel expenses should be made." The district court determined that, beginning in 2003, mother "shall bear the reasonable and necessary expenses for two visits (round trip) for the children per year."

[¶ 7] After the district court issued its decision letter, the parties could not agree on a final order in a timely fashion. Consequently, the district court bifurcated the proceedings. On December 21, 2001, it entered a decree of divorce, which served to divorce the parties and leave all remaining issues for a future order. Finally, on March 26, 2002, the district court entered its "Order of Child Custody, Visitation and Support and Property and Debt Division." That order implemented child support in accord with the district court's decision letter. This appeal followed.

## STANDARD OF REVIEW

[¶ 8] Decisions concerning child support are committed to the sound discretion of the district court. *Carlton v. Carlton,* 997 P.2d 1028, 1031 (Wyo.2000); *Reavis v. Reavis,* 955 P.2d 428, 431 (Wyo.1998); *Scherer v. Scherer,* 931 P.2d 251, 253–54 (Wyo. 1997).

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. We must ask ourselves whether the district court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious.

*Thomas v. Thomas,* 983 P.2d 717, 719 (Wyo. 1999) (citations and quotations omitted).

## DISCUSSION

### A. Imputed Income

[¶ 9] Mother claims the district court abused its discretion when, for purposes of calculating child support, it imputed to her an annual income of $35,000. Mother does not challenge the district court's determination that she is underemployed and that income should be imputed. Instead, her complaint is that the amount of imputed income is too high given the record in this matter. Specifically, mother asserts that the record does not contain evidence of employment opportunities or prevailing wages in Gillette. In addition, she points out that the only time she made $35,000 a year was in 1992 in Virginia. In response, father contends it is reasonable to impute income to mother at $35,000, especially considering that she has a degree in business administration and is four classes short of attaining a Masters Degree in Business Administration (MBA).

[¶ 10] In defining "income" for child support purposes, the legislature has determined that, "[g]ross income also means potential income of parents who are voluntarily unemployed or underemployed." Wyo. Stat. Ann. § 20–2–303(a)(ii) (LexisNexis 2003). In turn, imputation of income is controlled by Wyo.

Stat. Ann. § 20–2–307 (LexisNexis 2003), which provides in pertinent part:

(b) A court may deviate from the presumptive child support established by W.S. 20–2–304 upon a specific finding that the application of the presumptive child support would be unjust or inappropriate in that particular case. In any case where the court has deviated from the presumptive child support, the reasons therefor shall be specifically set forth fully in the order or decree. In determining whether to deviate from the presumptive child support established by W.S. 20–2–304, the court shall consider the following factors:

* * * *

(xi) Whether either parent is voluntarily unemployed or underemployed. In such case the child support shall be computed based upon the potential earning capacity (imputed income) of the unemployed or underemployed parent. In making that determination the court shall consider:

(A) Prior employment experience and history;

(B) Educational level and whether additional education would make the parent more self-sufficient or significantly increase the parent's income;

(C) The presence of children of the marriage in the parent's home and its impact on the earnings of that parent;

(D) Availability of employment for which the parent is qualified;

(E) Prevailing wage rates in the local area;

(F) Special skills or training; and

(G) Whether the parent is realistically able to earn imputed income.

[¶ 11] A deviation from the child support guidelines is permitted only when the trial court makes a finding that it would be unjust or inappropriate to follow them in a particular case and it specifically sets forth in full the reasons for the deviation in the divorce decree. *Raymond v. Raymond,* 956

P.2d 329, 334 (Wyo.1998); *Wood v. Wood,* 964 P.2d 1259, 1265 (Wyo.1998); *Sharpe v. Sharpe,* 902 P.2d 210, 214 (Wyo.1995). Nothing in this statute prevents a district court from imputing income to a custodial parent, and we affirmed the imputation of income to a custodial mother in *In re Paternity of IC,* 971 P.2d 603, 607 (Wyo.1999). Also, in cases involving imputed income, we have required evidentiary support for imputation of income at a certain rate. *Id.* at 608; *Whitt v. State ex rel. Wright,* 2001 WY 128, ¶¶ 14–15, 36 P.3d 617, ¶¶ 14–15 (Wyo.2001).

[¶ 12] We agree with mother that the district court's decision is not supported by the record. While the record does include evidence of mother's employment history and education level, it does not include any evidence regarding availability of employment and prevailing wage rates in the local area. Thus, while it is true that mother has a degree in business administration and that she earned $35,000 in Virginia in 1992, the district court record includes nothing to support the proposition that mother is realistically able to earn, in the Gillette area, the income imputed to her. *See Connell v. Connell,* 718 So.2d 842 (Fla.App. 2 Dist.1998).

[¶ 13] Indeed, the parties seemed to acknowledge this lack of evidentiary support in making their written closing arguments to the district court. Interestingly, in their child support calculations, both parties proposed that the district court impute income to mother based on the minimum wage. In fact, the imputed income proposed by the parties was identical.[1] The written closing arguments underscore the problem on this issue: the record does not support the decision to impute income to mother at the rate of $35,000 per year. The district court's decision to do so therefore must be reversed.

## B. Allocation of Visitation Expenses

[¶ 14] In her second issue, mother argues the district court abused its discretion with respect to allocation of visitation expenses.

---

1. Imputing income to mother at minimum wage ($896 /month) would, utilizing the other number used by the district court, result in a presumptive support obligation for father of approximately $1,175 per month, as opposed to that found by the district court, $1,105 per month. *See* Wyo. Stat. Ann. 20–2–304(a)(ii) (LexisNexis 2003). In fact, $1,175 per month is the amount mother calculated and proposed in her written closing argument.

First, mother claims an abuse of discretion in the district court's downward deviation in child support to offset visitation expense to father. Second, mother complains that, beginning in 2003, she is required to pay for two of the children's visits. Mother contends the district court's order allows the father to "have his cake and eat it, too" because not only is father's child support obligation reduced because of visitation expense, mother also has to pay for two visits per year. Father responds that, while this action was pending, he exercised his visitation rights often and that he will continue to do so, as permitted by the district court's visitation order. Father contends that, under the circumstances, making mother pay for two trips per year is not unreasonable. Also, father points out that mother resides with her parents, thus reducing her living expenses.

■ [¶ 15] Before addressing these issues, we must note that the district court's decisions regarding allocation of visitation expenses are premised on an imputed income to mother of $35,000. Because we have determined the record does not support imputation of income at that amount, we cannot address these issues without the risk of offering an advisory opinion. However, for the sake of judicial economy and to reduce the litigation expenses for the parties, we will address the issues as best we can under the circumstances.

[¶ 16] It must also be preliminarily noted that the district court granted father liberal visitation rights. Beginning in 2003, when the oldest child will be of school age, father is permitted visitation on basically every other weekend, on alternating major holidays, and for Father's Day. The district court also granted father summer custody of the children, beginning in 2003.[2]

[¶ 17] Turning to mother's issues, she attacks, in two different ways, the downward deviation from the presumptive child support amount. Mother contends, first, that the district court erred in failing to consider all the factors contained in § 20–2–307(b). Second, she contends that the district court's decision is not supported by the record. As detailed in its decision letter, the district court found father's presumptive support obligation was $1,105 per month. Taking into account the difficulty and expense to father in exercising visitation, the district court deviated from that amount, reducing father's support obligation to $900 per month. In doing so, the district court relied on § 20–2–307(b)(vii), which permits a district court to deviate from the presumptive support amount in consideration of the "cost of transportation of the child to and from visitation."

[¶ 18] With respect to mother's first contention, she presents no authority for the proposition that the district court, in making its determination to deviate from the pre-

2. With respect to visitation, the district court's order provided:

Visitation. The defendant shall have the right of visitation with the parties' minor children as set forth herein:
1. At all times, holiday visitation shall take precedence over regular visitation.
* * * *
3. 2003 and Beyond (When the Oldest Child is School Age).
a. Every weekend when Fridays are odd-numbered, beginning at 6:00 p.m. on Friday until 6:00 p.m. on the following Sunday.
b. Holiday Visitation.
1. Alternating major holidays, with said major holidays being defined as New Years (the second half of the break from school), Spring Break/Easter (April school break), July Fourth (for a period of four days), Thanksgiving and Christmas (the first half of the break from school).
Beginning in 2003, the Defendant shall have New Years, July Fourth and Christmas in odd-numbered years and he shall have Spring Break/Easter and Thanksgiving in even-numbered years. The calendar of the school which the children attend shall be the calendar used to determine visitation.
2. The schedule shall alternate each year so that the party who has the children for a particular holiday during the year will not have the children on the same holiday the following year.
3. The Plaintiff shall have the children on Mother's Day and the Defendant shall the children on Father's Day.
c. Summer Custody. From five (5) days after school recesses in the spring until five (5) days before school resumes in the fall. During Defendant's summer custody, Plaintiff shall have custody of the minor children for two (2) weekends commencing at noon on Friday and continuing until 5:00 p.m. on Sunday. In 2004 and beyond, when Plaintiff has the children for July Fourth, she shall have only one other visit during Defendant's summer custody.

sumptive support amount, must examine all the factors listed in § 20-3-307(b) and that it cannot rely on only one of the factors. In addition, even though the district court's decision relies on only one factor, that does not necessarily mean the district court did not consider the others. We reject this contention.

[¶ 19] As for mother's contention that the record does not support the district court's decision, the record reveals that, because of mother's relocation with the children to Wyoming, father must incur substantial expenses in exercising visitation. While this matter was pending in the district court, father made five trips to Wyoming, and the children traveled to Virginia, with their mother, once. Father testified that his visits to Wyoming cost between $700 and $1200. Mother also presented testimony and exhibits concerning travel costs from her trip to Virginia with the children. Thus, unlike mother's claim with respect to imputed income, there is adequate support in the record to sustain the district court's decision to deviate. Under the circumstances, the district court's decision to deviate is well within the bounds of reason, and we find no abuse of discretion on the deviation decision. *In re Paternity of IC*, 971 P.2d at 607–08. We further find that, under these circumstances, a downward deviation would be permissible regardless of whether the district court imputes income at $35,000 or at minimum wage.

[¶ 20] However, we recognize that the district court's decision on the **amount** of deviation was based on a presumptive child support amount that was, in turn, based on imputed income of $35,000. Thus, while we affirm the decision to deviate, we must reverse the amount of deviation. The district court maintains the discretion to adjust the amount of deviation in light of the proceedings on remand.

[¶ 21] Mother also challenges the district court's requirement that she pay for two visits per year, starting in 2003. In addition to challenging the allocation itself, mother argues that requiring her to pay for two trips per year, when combined with the deviation from the presumptive support amount due to transportation, amounts to an abuse of discretion. We first note that the district court has statutory authority to allocate the costs of transporting the children pursuant to Wyo. Stat. Ann. § 20-2-202(a)(ii) (LexisNexis 2003).[3] Second, as noted above, father was granted liberal rights to visitation, and the visitation expenses are substantial. Finally, we note that other courts have approved a decision requiring a parent to share in the expense of a situation that he or she helped to create. *Stanton v. Abbey*, 874 S.W.2d 493, 501 (Mo.App. E.D.1994) ("We do not find it inequitable for mother to pay the transportation costs which result from her moving [from Missouri] to California with the children."). Here, because the district court relied on the imputed income of $35,000 in making its decision on this issue, and because the parties' respective incomes, whether imputed or otherwise, are key factors in allocating the expense of visitation, we must also reverse on this issue to allow the district court to reconsider its decision in light of the proceedings on remand.

[¶ 22] For the foregoing reasons, this case is reversed and remanded to the district court for proceedings consistent with this opinion.

---

**3.** Wyo.Stat.Ann. § 20-2-202(a)(i) provides in part:
(a) The court may order visitation it deems in the best interests of each child and the court shall:

* * * *
(ii) Provide for the allocation of the costs of transporting each child for purposes of visitation[.]