2010 WY 70

Lisa LAUDERMAN, Appellant (Respondent),

v.

STATE of Wyoming, DEPARTMENT OF FAMILY SERVICES ex rel. JEN, a minor child, Appellee (Petitioner),

and

Russell Nomura, Appellee (Respondent).

No. S–09–0100.

Supreme Court of Wyoming.

May 28, 2010.

Representing Appellant: Wendy Press Sweeny of Wendy Press Sweeny, Attorney at Law, P.C., Worland, Wyoming.

Representing Appellee State of Wyoming, Department of Family Services ex rel. JEN, a minor child: Bruce A. Salzburg, Wyoming Attorney General; Robin Sessions Cooley, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General; Elisabeth B. Lance, Assistant Attorney General.

Representing Appellee Russell Nomura: David M. Clark, of Worrall & Greear, P.C., Worland, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] Lisa Lauderman, (Mother) and Russell Nomura (Father) have one child. The Department of Family Services (DFS) filed a motion to modify child support. After a hearing, the district court reduced Father's child support obligation. Mother appeals. We affirm.

## ISSUES

[¶ 2] Mother presents multiple issues, but they can be reduced into two main issues. First, Mother argues the district court abused its discretion in calculating the parties' respective incomes. Second, Mother argues the district court abused its discretion in admitting certain letters into evidence.

## FACTS

[¶ 3] Mother and Father never married but they had one child together in 1999. Mother has always had custody of the child. In 2004, Father's child support obligation was set at $263.00 per week. In early 2007, Father fell $3,419.00 in arrears. He paid the arrears in full. In November 2007, DFS filed a Petition for Modification of Child Support.

[¶ 4] The district court held an evidentiary hearing on the Petition. After the hearing, the district court made the following findings:

3. At the time of the trial in this matter, the Respondent, Lauderman, was the mother of two (2) minor children, the child at issue who is nine (9) years of age, and an infant daughter born in June, 2009. She was employed at L & H Industrial, Inc., as a welder from May, 2007 until her termination in November, 2007, as a result of her pregnancy.

4. At the time of the trial in this matter, the Respondent, Nomura, was a self-employed dry waller operating his own business referred to as RNR Drywall, Inc. Mr. Nomura is the sole officer and shareholder of the business.

5. Respondent Lauderman should be imputed a net income as she is voluntarily unemployed. The Court should impute her income from prior years and based on her 2007 W–2. The fact that she is a stay-at-home mother should have no bearing on the imputed income.

6. Respondent Lauderman is capable of earning $16.00 per hour and her income is based on the following calculations:

| | |
|---|---|
| $33,280.00 | Gross income ($16.00 × 2080 hours per year) |
| -$ 0.00 | Federal income (tax credits are higher than taxes owed) |
| -$ 2,053.00 | Social Security |
| -$ 483.00 | Medicare |
| $30,744.00 | annual net income (does not include tax credits |

Divided by 12 months = **$2,562.00 net monthly income**

7. Respondent Nomura's net monthly income is based upon his 2008 actual earnings and his earning capability in the fu-

ture, rather than what he earned during more prosperous economic times.

8. To use Respondent Nomura's prior years' income would result in imputing a net income that would result in an impossibly high child support obligation and would set this party up for failure. Therefore, 2008 is the only year that should be used to determine the Respondent Nomura's net monthly income.

9. Respondent Nomura's net monthly income is derived from using this net revenues from RNR Drywall in the amount of $21,518.05. This is the amount of actual money that was available to Nomura from the business during 2008. This amount is derived by adding the operating income of $5,076.78, plus the income from the sale of an asset (truck) in the amount of $16,441.27.

10. The health insurance of $2,256.38 should be added back in and counted towards the Respondent Nomura's net income as his net revenues from the business were reduced by this line item and is not for the benefit of the child.

11. Depreciation of $107.20 should further be added back to Mr. Nomura's net revenues since Wyoming law does not allow depreciation to reduce someone's net income.

12. Officer salary of $17,840.48 should count towards Mr. Nomura's net income.

13. Unemployment benefits of $3,490.00 should count towards Mr. Nomura's net income.

14. The Section 179, Depreciation of $36,032.95, should not be included in the net monthly income of Mr. Nomura. The Court finds that this is not a paper deduction, but rather, is an actual expenditure (for a truck) and should be entirely deducted.

15. The 2008 draws of $54,940.34 should not be used for determining the Respondent Nomura's income in 2008. To count the 2008 draws from the business as income for the Respondent Nomura in 2008 would be unfairly inflating his income because it comes from money that was earned in prior years.

16. The net income of the Respondent Nomura is determined as follows:

| $21,518.08 | 2008 net revenues from RNR Drywall |
| $ 3,490.00 | Unemployment |
| $ 2,256.38 | Health Insurance |
| $ 107.20 | Depreciation |
| $17,840.48 | Officer Salary (no calculation avail. for personal taxes) |
| $45,212.14 | annual net income |

**Divided by 12 months = $3,767.68 net monthly income**

17. Child support is therefore calculated at $650.00 according to the child support guidelines in effect at the time of entry of this Order based upon mother's imputed net monthly income of $2,562.00; and father's net monthly income of $3,767.68.

In sum, Father's child support obligation was reduced from $263.00 per week to $650.00 per month.

## DISCUSSION

### Standard of Review

[¶ 5] We review a district court's order on a petition to modify child support to determine if the district court has abused its discretion. *Gray v. Pavey*, 2007 WY 84, ¶ 8, 158 P.3d 667, 668 (Wyo.2007). Our review entails evaluation of the sufficiency of the evidence to support the district court's decision. In evaluating the evidence, we afford to the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. *Triggs v. Triggs*, 920 P.2d 653, 657 (Wyo. 1996), *abrogated on other grounds by Vaughn v. State*, 962 P.2d 149 (Wyo.1998); *Cranston v. Cranston*, 879 P.2d 345, 351 (Wyo.1994). Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. *Jones v. Jones*, 858 P.2d 289, 291 (Wyo.1993). Similarly, an abuse of discretion is present " 'when a material factor deserving significant weight is ignored.' " *Triggs*, 920 P.2d at 657 (quoting *Vanasse v. Ramsay*, 847 P.2d 993, 996 (Wyo.1993)). *See Witowski v. Roosevelt*, 2009 WY 5, ¶ 13, 199 P.3d 1072, 1076 (Wyo.2009); *Bingham v. Bingham*, 2007 WY 145, ¶ 10, 167 P.3d 14, 17–18 (Wyo.2007); *Pahl v. Pahl*, 2004 WY 40, ¶ 6, 87 P.3d 1250, 1252 (Wyo.2004).

*Analysis*

[¶ 6] We begin by noting that Mother's appellate argument is premised on the belief that the district court deviated from the presumptive child support amount calculated pursuant to Wyo. Stat. Ann. § 20–2–307. Mother's argument is misplaced. The district court did not deviate from the presumptive child support amount. What Mother actually takes issue with, and what we will discuss, is the district court's computation of income for the respective parties.

[¶ 7] Determination of child support amounts is governed by statute. The first step in calculating child support is determining the parents' respective monthly net incomes. "Income" and "net income" are defined in Wyo. Stat. Ann. § 20–2–303(a) as:

(ii) "Income" means any form of payment or return in money or in kind to an individual, regardless of source. Income includes, but is not limited to wages, earnings, salary, commission, compensation as an independent contractor, temporary total disability, permanent partial disability and permanent total disability worker's compensation payments, unemployment compensation, disability, annuity and retirement benefits, and any other payments made by any payor, but shall not include any earnings derived from overtime work unless the court, after considering all overtime earnings derived in the preceding twenty-four (24) month period, determines the overtime earnings can reasonably be expected to continue on a consistent basis. In determining income, all reasonable unreimbursed legitimate business expenses shall be deducted. Means tested sources of income such as Pell grants, aid under the personal opportunities with employment responsibilities (POWER) program, food stamps and supplemental security income (SSI) shall not be considered as income. Gross income also means potential income of parents who are voluntarily unemployed or underemployed;

(iii) "Net income" means income as defined in paragraph (ii) of this subsection less personal income taxes, social security deductions, cost of dependent health care coverage for all dependent children, actual payments being made under preexisting support orders for current support of other children, other court-ordered support obligations currently being paid and mandatory pension deductions. Payments towards child support arrearage shall not be deducted to arrive at net income[.]

Wyo. Stat. Ann. § 20–2–303(a)(ii) and (iii) (LexisNexis 2009).

*Mother's Income*

[¶ 8] Mother first objects to the district court's finding that she was voluntarily unemployed. The evidence supports this finding. Mother had worked as a welder in 2007. After she was let go from that job, she decided to be a stay-at-home mother. Mother testified that there were welding jobs currently available in her town, which she was physically capable of performing. She wasn't applying for them because she didn't want to be away from her children. Given this testimony, it was well within the district court's discretion to find Mother voluntarily unemployed. *See, e.g., In re Paternity of IC,* 971 P.2d 603, 607 (Wyo.1999) (voluntarily leaving job to return to school constitutes voluntary unemployment).

[¶ 9] Mother next objects to the amount of income imputed to her. In 2007, when she was working as a welder, she was earning $16.00 per hour. Mother testified that jobs were available at the time of the hearing and were paying $16.00 per hour. Mother's own evidence supports the district court's decision to impute to her a salary of $16.00 per hour.

[¶ 10] Mother's objection continues that the district court abused its discretion when it did not subtract any amount for federal income tax. The district court's calculations show that it considered federal income tax. It determined the tax credits available to Mother exceeded the amount of federal income tax owed based on the imputed salary. In making this determination, the district court adopted figures provided by the DFS indicating the amount of earned income credit and child tax credit would be more than the federal income tax due. The district court's reliance on the DFS calculation is reasonable under the circumstances.

### Father's Income

[¶ 11] Turning to Father's income, Mother contends Father should be found to be voluntarily underemployed. The evidence shows that Father worked as a drywaller for 18 years. He owned and operated a drywall business in the Jackson area. When business declined in the Jackson area Father relocated to Worland. Despite his attempts to keep the business going, Father testified there was simply no work available: "I've hit every job there is. I've stopped on every job site there is. I've spoke [sic] with every contractor there is in Jackson, Worland, Thermop [sic], surrounding areas. I have contacts nationwide, and everybody's out of work right now." Father even looked for jobs in the oil field sector but was unable to find anything. Given the evidence, we find no credence in Mother's contentions that Father isn't looking hard enough or in a wide enough geographic scope.

[¶ 12] Mother next takes issue with the district court's computation of Father's income. First, she argues the district court should have included in-kind benefits Father received from his business as income. Mother does not, however, identify any in-kind benefits received by Father. We therefore need not consider this argument further.

[¶ 13] Mother also argues the district court erred in not including certain draws Father took from his business in 2008 as income. Father's accountant, however, explained that draws are unrelated to business income. Draws come from money already in the business that could have been earned at any time during the business's existence. At the time of the hearing, the business had only approximately $9,000.00. Father's future income, therefore, would be limited to amounts earned during the current year. Under the circumstances, the district court did not abuse its discretion in not factoring the draws into Father's income for child support purposes.

[¶ 14] Finally, Mother argues the district court abused its discretion in using Father's 2008 income instead of his 2007 income. The district court explained its decision in its order. It did not use Father's 2007 income because it did not accurately reflect current economic conditions. The district court determined Father was not likely to be able to earn the same amount in the future. Given the well-documented collapse of the construction industry, as well as Father's testimony as to how the economic downturn is affecting him personally, we find the district court was within its discretion in relying on Father's 2008 actual income as more appropriately indicative of Father's future earning capacity.

[¶ 15] In *Woodward v. Woodward*, 428 P.2d 389 (Wyo.1967), a case wherein a father's earning capacity had deteriorated, this Court stated

the trial court has found that, due to no fault or choice of his own, the father of the children does not now have an earning capacity or income sufficient to enable him to pay more than the amount required by the court's decree.

\* \* \* \*

... [S]hould the future earning capacity and ability of the father be bettered, either by improvement in his health or through his securing of more remunerative employment or additional estate, the door remains open to show such changed condition, and modification of the court decree may be had.

The law never intends to require the impossible, and an award without ability to pay would have been a fruitless gesture which could not inure to the benefit of the minor children whose welfare is of primary concern to courts.

*Id.* at 390. The same comments apply here.

### Introduction of Letters

[¶ 16] During the hearing, to support his testimony that he had been actively looking for work, Father offered multiple letters from contractors stating they had no work available for him. The district court admitted the letters into evidence over Mother's several objections including a hearsay objection. The decision of whether or not to admit evidence lies within the discretion of the trial court. *Three Way, Inc. v. Burton Enters., Inc.*, 2008 WY 18, ¶ 29, 177 P.3d 219, 228 (Wyo.2008). We will not disturb the trial

court's ruling absent abuse of that discretion. *McCabe v. R.A. Manning Constr. Co., Inc.,* 674 P.2d 699, 706 (Wyo.1983). As always, even if this Court determines that the trial court erred in ruling on the admissibility of evidence, we disregard errors which are harmless. W.R.C.P. 61; W.R.A.P. 9.04; W.R.E. 103.

[¶ 17] We need not discuss whether the admission of the letters constituted error because, even if it did, Mother was not prejudiced by such introduction. The district court listened to Mother's objections and admitted the letters over the objections stating "[t]he Court can give them the weight that it determines, so I don't think that it's going to be prejudicial." There is no further indication that the district court relied on the letters, nor was it necessary for the district court to do so. Father testified extensively as to his continuing job search. The letters do nothing more than corroborate that testimony. *See Rudy v. Bossard,* 997 P.2d 480, 484 (Wyo.2000) (no prejudice in admission of letter when letter did nothing more than corroborate testimony).

## CONCLUSION

[¶ 18] We find no abuse of discretion in the district court's calculation of the parties' respective incomes for child support purposes. The decision is reasonable under the circumstances. We also find no harm in the introduction of letters corroborating Father's extensive testimony on his attempts to find work. Affirmed.

HILL, Justice, dissenting.

[¶ 19] I respectfully dissent because my review of this case convinces me that the proceedings that are included in the record on appeal are insufficient to disturb the status quo. In 2004, a New Jersey court set Father's child support obligation at $263.00 per week. That judgment was registered in Wyoming in 2005 and under its terms, Father has been required to pay that much in child support to Mother since that time (although he has not always done so). The child at issue in this appeal is nearing 11 years of age as we address the difficulties that this case poses.

[¶ 20] In Wyoming it is traditional to set child support as a monthly figure and so I would calculate that figure like this: $263.00 × 52 weeks = $13,676.00 per year ÷ 12 months = $1,139.6666 rounded to $1,139.67 per month. In her brief, Mother contends/concedes that Father should pay $1,109.88, if the "facts and figures" that can be gleaned from the record on appeal are deemed to be accurate enough to provide the basis for a reliable decision in that regard. Mother concedes she can do some work and earn approximately $1,269.73 per month.

[¶ 21] During the months May through November in 2007, just before the birth of her youngest child, Mother earned $16.00 an hour as a welder, although she only worked for seven months during that year (she was discharged late in her pregnancy). So, in addition to the child she shares with Father, Mother now has the care of an infant child born of a recent relationship. Mother's contention is that, while she is capable of doing some work, she cannot go back to welding full-time. This is so because she cannot arrange adequate child care for her infant child because the work shifts for welders are 12-hour shifts. In addition, she must, of course, provide parenting for the older child who is the beneficiary of Father's child support.

[¶ 22] The district court determined that Mother was capable of working 40 hours a week, 52 weeks a year, at a pay rate of $16.00 an hour ($33,280.00 annually). Although Father has historically earned significantly more than he did in 2008, the district court determined that Father's income for 2008 was $3,767.68 per month. The year 2008 was chosen because that was the year "hard-times" hit in the construction industry (Father owns a dry-wall company). Based on that calculation, Father was to pay Mother $650.00 per month in child support. The district court's equation is just not an acceptable means of calculating child support. The evidence suggested that Father was capable of earning significantly more than the amount attributed to him (and very likely was earning more). The testimony suggested that Father used his construction company to pay many of his living expenses, includ-

ing transportation and housing. Although the Internal Revenue Service allows such "deductions" and "adjustments" for income tax purposes, this Court should not permit adequate child support to hinge upon how talented a parent's accountant (and the taxpayer himself) is at the art of income tax avoidance. See *Durham v. Durham*, 2003 WY 95, ¶¶ 8–12, 74 P.3d 1230, 1233–34 (Wyo. 2003); *Bailey v. Bailey*, 954 P.2d 962, 967 (Wyo.1998); 3 Anteau, et al., *Family Law Litigation Guide with Forms: Discovery, Evidence, Trial of Child Support Issues* § 34.04[b] (Imputed Income) (2008).

[¶ 23] We have held that the district court's discretion with respect to child support is limited by Wyoming's statutes that govern that subject. Wyo. Stat. Ann. §§ 20–2–301 through 20–2–315 (LexisNexis 2009); *Steele v. Steele*, 2005 WY 33, ¶ 12, 108 P.3d 844, 849 (Wyo.2005).

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.

*Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998). Under the facts and circumstances presented here, the district court decision is not "right." It applies two widely divergent formulas in calculating the parties' incomes and produces a result that is an affront to both the letter and the spirit of the statutes governing child support.

[¶ 24] For these reasons I would remand this matter to the district court with directions that the "Order on Petition for Modification of Support" state a conclusion that Father's obligation to pay child support must remain unchanged.