# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 161

OCTOBER TERM, A.D. 2014

December 15, 2014

SUSANNE S. LEVENE,

Appellant
(Plaintiff),

v.

S-14-0096

DANIEL ELLIS LEVENE,

Appellee
(Defendant).

*Appeal from the District Court of Albany County*
*The Honorable Jeffrey A. Donnell, Judge*

**Representing Appellant:**
    *Pro se.*

**Representing Appellee:**
    *Anthony F. Ross, Ross, Ross & Santini, LLC, Cheyenne, Wyoming.*

**Guardian Ad Litem:**
    *Stacy L. Rostad, Nicholas & Tangeman, LLC, Laramie, Wyoming.*

**Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.**

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]    Appellant, Susanne Levene (Mother), acting *pro se*, challenges an order denying her motion to modify child support.  She contends the district court erred in determining she was voluntarily unemployed.  We affirm.

## *ISSUE*

[¶2]    Mother presents four issues, each of which relates to the district court's determination that she was voluntarily unemployed from January to November, 2013.  Accordingly, we distill Mother's issues into a single issue statement:

> Whether the district court erred in determining that Mother was "voluntarily unemployed" for purposes of Wyo. Stat. Ann. §§ 20-2-303(a)(ii) and 20-2-307(b)(xi) from January to November, 2013.

## *FACTS*

[¶3]    The parties were married in 1996, and the marriage produced three children.  Mother is a general surgeon and Appellee, Daniel Levene (Father), is an orthopedic surgeon practicing in Laramie, where he has resided at all times during this litigation.  Mother filed a complaint for divorce in 2003, and the parties entered into a Property Settlement and Child Custody Agreement in January, 2004.    That agreement contemplated that Mother would have primary custody of the children.  Before the divorce decree was signed, however, Mother drove drunk with the children in her car and was involved in an automobile accident.  She ultimately pled guilty to driving while under the influence of alcohol.

[¶4]    As a result of the accident and Mother's drinking problem, Father and the children's guardian ad litem filed a joint petition to modify custody.  The parties subsequently entered into a Stipulated Order for Modification of Custody, which incorporated the following provision concerning Mother's alcohol issues:

> The above custody arrangement is conditioned upon (a) Mother maintaining sobriety without any significant relapses of use, and (b) Mother continuing phase II of substance and alcohol counseling or treatment so long as deemed necessary by Mother's present counselor and treatment substance abuse providers.

Mother relapsed shortly after entry of the stipulated order and in August, 2004, Father petitioned the district court for a modification of custody.  The court granted Father's

petition and awarded him primary residential custody of the children. In granting Father's petition, the court noted that Mother had refused to comply with urinalysis testing and admitted that she had lied to the court about her compliance. With respect to Mother's child support obligation, the court noted that Mother was unemployed but was pursuing employment as a physician. As a result, the court attributed a minimum wage salary to Mother and ordered her to pay child support in the amount of $147.81 per month.

[¶5]    On October 2, 2007, Mother filed a petition to modify the district court's custody order. Mother asserted that she was fit to have custody of the parties' children and that she had "remained sober and has completely abstained from the use of alcohol." Mother noted that she had been employed full time at a general surgical practice in Rugby, North Dakota since June, 2006. Three days before that petition was filed, however, Mother was again arrested for driving while under the influence of alcohol while the children were riding as passengers in her vehicle. As a result of this incident, the district court ordered that Mother's visitation with the children be supervised.

[¶6]    In April, 2008, Father filed a petition for adjustment of child support. At that time, Mother was earning $260,000.00 per year at the surgical practice in North Dakota. On August 29, the court entered an order finding that Mother's presumptive child support obligation was $1,259.00 per month. However, the court ordered Mother to pay child support in the amount of $259.00 per month, a $1,000 downward deviation from the presumptive child support amount. The court noted that the deviation was justified by the costs incurred by Mother for monthly visitation.

[¶7]    In 2009, the district court entered a Stipulated Custody and Visitation Order after Mother filed a Motion to Allow Unsupervised Visitation. In that order, the parties agreed that Mother would be allowed to exercise unsupervised visitation on the conditions that she remain gainfully employed, maintain sobriety, and continue with appropriate alcoholism treatment and counseling. The order also required that "Neither parent shall ask questions of or engage in conversations with the children which invite a child to choose sides or provide information that reflects negatively on the other parent," and that neither party "shall video tape or audio record any of the visitation exchanges between the children and either parent, a nanny, sitter or the children's grandparents."

[¶8]    Mother left her employment in North Dakota in May, 2010 to take a job as a general surgeon in Lamar, Colorado, where she earned a yearly salary of $300,000.00. In May, 2011, the district court entered a Stipulated Order Modifying Child Support. The court ordered Mother to pay the presumptive child support obligation of $1,407.10 per month. Additionally, in March, 2011, Father requested that the court find Mother in contempt for violating the Stipulated Custody and Visitation Order entered in 2009. The court granted Father's motion after determining that Mother had violated the provision prohibiting the parties from inviting the children to choose or providing information that

reflects negatively on the other parent.

[¶9]    Mother left her job in Colorado in the summer of 2012 and remained unemployed until November, 2012, when she took a job as a surgeon in Lewiston, Idaho, earning a salary of $350,000.00 per year.  However, Mother left that position after only two months as a result of job dissatisfaction and a conflict with another surgeon.  After voluntarily leaving her position in Idaho, Mother apparently intended to start her own surgical practice with another doctor in Casper, Wyoming, but ultimately chose not to pursue that opportunity.  In the fall of 2013, Mother secured employment as the Medical Director at the Wyoming State Penitentiary in Rawlins, Wyoming, at a salary of $249,000.00 per year.  She also accepted employment at Memorial Hospital in Carbon County.

[¶10]  The present matter began in January, 2013, when Mother filed a petition to modify child support.  Mother asserted that an adjustment of child support was appropriate because she was, at that time, unemployed.  In response, Father filed a motion for an order to show cause as to why Mother should not be held in contempt for failing to pay child support.  The district court conducted hearings on the parties' motions on January 17 and January 31, 2014.  Following the hearings, the district court entered an Order of Contempt and Order Denying Child Support Modification.  The court determined Mother's monthly net income to be $10,980.00 and her presumptive child support obligation to be $1,393.00 per month.  The court concluded that a modification of child support was not warranted because $1,393.00 did not represent a 20% change from Mother's existing child support obligation, as required under Wyo. Stat. Ann. § 20-2-311.  The court further found that Mother was in arrears on her child support obligation in the amount of $27,265.38 and ordered her to pay $1,000.00 per month toward the arrears.

[¶11]  Additionally, in response to Mother's claim that her periods of unemployment warranted a modification of child support during those periods, the district court determined that Mother was not entitled to modification due to the fact that she was voluntarily unemployed.  The court stated:

> Those periods of unemployment were caused by Plaintiff's decisions to terminate her well-paying medical positions, and the reasons she gives are entirely incredible.  It is apparent, rather, that Plaintiff generally departed from employment in Colorado and Idaho due to her unilateral inability to form working relationships with her colleagues.  This Court will not modify Plaintiff's support obligations, or relieve her of them, based on her personality issues.

Finally, the court held Mother in contempt of court for tape-recording phone conversations between her children and Father, urging the children to take sides on issues relating to custody and visitation, and failing to pay child support.  Mother timely

appealed the district court's order. She challenges only the district court's refusal to modify child support during the period, from January to November, 2013, in which she was unemployed.

## *STANDARD OF REVIEW*

[¶12] We review the district court's decision on child support for abuse of discretion:

> There are few rules more firmly established in our jurisprudence than the proposition that disposition of marital property, calculation of income for child support purposes, and the granting of alimony are committed to the sound discretion of the district court. *Johnson v. Johnson*, 11 P.3d 948, 950 (Wyo. 2000). Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Id.*; *Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998). We must ask ourselves whether the trial court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious. *Johnson*, 11 P.3d at 950. In accomplishing our review, we consider only the evidence in favor of the successful party, ignore the evidence of the unsuccessful party, and grant to the successful party every reasonable inference that can be drawn from the record. *Id.*

*Opitz v. Opitz*, 2007 WY 207, ¶ 7, 173 P.3d 405, 407-408 (Wyo. 2007) (quoting *Belless v. Belless*, 2001 WY 41, ¶ 6, 21 P.3d 749, 750-751 (Wyo. 2001)).

## *DISCUSSION*

[¶13] Under Wyo. Stat. Ann. § 20-2-303(a)(ii), "income" for purposes of determining child support is defined to include "potential income of parents who are voluntarily unemployed or underemployed." Wyo. Stat. Ann. § 20-2-307(b), in turn, identifies factors that may be used to determine a parent's potential earning capacity:

> (b)    A court may deviate from the presumptive child support established by W.S. 20-2-304 upon a specific finding that the application of the presumptive child support would be unjust or inappropriate in that particular case. In any case

4

where the court has deviated from the presumptive child support, the reasons therefor shall be specifically set forth fully in the order or decree. In determining whether to deviate from the presumptive child support established by W.S. 20-2-304, the court shall consider the following factors:

. . .

(xi) Whether either parent is voluntarily unemployed or underemployed. In such case the child support shall be computed based upon the potential earning capacity (imputed income) of the unemployed or underemployed parent. In making that determination the court shall consider:

(A) Prior employment experience and history;

(B) Educational level and whether additional education would make the parent more self-sufficient or significantly increase the parent's income;

(C) The presence of children of the marriage in the parent's home and its impact on the earnings of that parent;

(D) Availability of employment for which the parent is qualified;

(E) Prevailing wage rates in the local area;

(F) Special skills or training; and

(G) Whether the parent is realistically able to earn imputed income.

Wyo. Stat. Ann. § 20-2-307(b) (LexisNexis 2013).

[¶14] Mother contends the district court erred in finding that she was voluntarily unemployed from January to November, 2013. She claims the court's conclusion was erroneous because there was no evidence to indicate that employment opportunities were available in Laramie and no evidence that her earnings as a surgeon in Laramie would be comparable to her historical earnings in Colorado and Idaho.

5

[¶15]  Mother relies on our decision in *Durham v. Durham*, 2003 WY 95, 74 P.3d 1230 (Wyo. 2003) to support her position.  However, the facts in *Durham* are distinguishable from the present case.  In *Durham*, the parties were married in 1992 and lived in Virginia. *Id.*, ¶ 3, 74 P.3d at 1232.  At the time of the parties' marriage, the mother was earning a salary of $35,000.  After the marriage, she became a homemaker and worked part-time for the parties' church, earning between $10,000 and $12,000 annually.  *Id.*  The parties separated in 1999, and the mother moved with the children to Gillette, Wyoming, where she taught piano and music lessons, earning approximately $7,000.  *Id.*, ¶ 4, 74 P.3d at 1232.  In the ensuing divorce proceedings, both parties proposed that, for purposes of calculating child support, the district court impute income to the mother based on the minimum wage.  *Id.*, ¶ 13, 74 P.3d at 1234.  The court, however, found that the mother was "intentionally underemployed" and imputed annual gross income to her at $35,000 per year  *Id.*, ¶ 5, 74 P.3d at 1232-1233.

[¶16]  On appeal, we held that the district court abused its discretion by failing to consider evidence regarding availability of employment and the prevailing wage rates for such employment.  *Id.*, ¶ 12, 74 P.3d at 1234.  We noted that we had previously required evidentiary support for imputation of income at a certain rate.  *Id.*, ¶ 11, 74 P.3d at 1234 (citing *In re Paternity of IC*, 971 P.2d 603, 608 (Wyo. 1999)).  Ultimately, we found that the record contained no evidence of the mother's ability to earn the income imputed to her:

> We agree with mother that the district court's decision is not supported by the record. While the record does include evidence of mother's employment history and education level, it does not include any evidence regarding availability of employment and prevailing wage rates in the local area. Thus, while it is true that mother has a degree in business administration and that she earned $35,000 in Virginia in 1992, the district court record includes nothing to support the proposition that mother is realistically able to earn, in the Gillette area, the income imputed to her. *See Connell v. Connell*, 718 So. 2d 842 (Fla.App. 2 Dist. 1998).

*Durham*, ¶ 12, 74 P.3d at 1234.  Accordingly, we reversed the district court's decision imputing income to the mother at the rate of $35,000 per year.  *Id.*, ¶ 13, 74 P.3d at 1234.

[¶17]  In contrast to *Durham*, the record in the present case contains ample evidence that Mother was able to earn the income imputed to her from January to November, 2013.

6

Mother has active licenses to practice medicine in North Dakota, Idaho, Colorado, California, and Wyoming.[1]  From 2006 to 2013, Mother was employed as a surgeon in North Dakota, Colorado, and Idaho, earning between $260,000.00 and $350,000.00 per year.  Mother left each of those positions voluntarily.  During the period in which Mother claims she was involuntarily unemployed, she chose not to pursue an opportunity to practice in Casper, Wyoming.  Mother is currently living in Laramie and is employed as a surgeon in Rawlins, earning $249,000.00 per year.  The record does not contain specific evidence of Mother's potential earning capacity in Laramie.  However, for the last ten years Mother has exercised her visitation with the children in Laramie while living and working in four different states.  Although Mother's desire to be closer to her children is commendable, she does not claim that her employment away from Laramie has prevented her from exercising her visitation with the children.  Accordingly, based on the facts of this case, we find no abuse of discretion in the district court's decision.

[¶18]  Additionally, the district court found that Mother was not a credible witness.  We have stated that "issues of credibility and the weight to be given to testimony are matters to be resolved by the trier of fact, not an appellate court.  Thus, we may not substitute our judgment for that of a trial court with respect to issues concerning credibility."  *JKS v. AHF (In re ARF)*, 2013 WY 97, ¶ 16, 307 P.3d 852, 856 (Wyo. 2013) (quoting *Yoeuth v. State*, 2009 WY 61, ¶ 31, 206 P.3d 1278, 1286 (Wyo. 2009)).  The district court found that Mother had testified falsely to the court on three separate occasions during the parties' post-divorce litigation.  Mother does not challenge those findings.  And indeed, the record supports the fact that Mother failed to be candid with the court on several occasions.  In 2004, when the parties sought to address Mother's substance abuse issues, she admitted she had lied to the court about her compliance with urinalysis testing.  In 2011, Mother admitted that she had been untruthful in deposition testimony when she denied engaging the children in conversations that invited the children to choose sides in the parties' custody dispute.  Mother was also untruthful at the January 31, 2014 hearing on her petition to modify child support when she denied tape-recording telephone conversations between the children and their counselor in 2010.  The evidence supports the district court's finding that Mother was not a credible witness, and the court could properly discount Mother's testimony concerning her inability to find employment from January to November, 2013.  We find no abuse of discretion in the district court's conclusion that Mother was voluntarily unemployed during this period.

[¶19]  Finally, Mother takes issue with the district court's finding that her periods of unemployment were due to "her unilateral inability to form working relationships with her colleagues."  She contends that the district court deprived her of "the opportunity to address that issue with further evidence, including testimony from other employees at the

---

[1] As a result of her DUI's, Mother has probationary medical licenses in Colorado and California.

hospital in Lewiston.  Accordingly, the finding deprived her of the opportunity to challenge the allegations levied against her, and hence of her right to due process." Again, however, the record supports the district court's findings.  Mother left her employment in Lamar, Colorado because she had a conflict with the chief of the medical staff.  Mother also left her employment in Lewiston, Idaho due to a conflict with another surgeon.  Ultimately, however, the precise circumstances surrounding Mother's conflicts with her colleagues in Idaho and Colorado are not relevant to a determination as to whether she was able to find employment.  The fact remains that Mother left her employment voluntarily, a finding she does not dispute.  The district court's determination that Mother's personality issues prevented her from continuing her employment did not deprive Mother of her right to due process.

[¶20]  Affirmed.