Jeannine Marie GROSSKOPF,
Appellant (Defendant),

v.

Loren M. GROSSKOPF, Appellee
(Plaintiff).

No. 83-126.

Supreme Court of Wyoming.

Feb. 10, 1984.

816

Stephen L. Simonton of Simonton & Simonton, Cody, for appellant.

Sharon A. Fitzgerald, Cheyenne, for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

CARDINE, Justice.

This appeal is from a judgment and decree in a divorce action and appellant's objection to its provisions for child support, division of property, and denial of alimony and attorneys fees. We will affirm.

The issues as framed by appellant are:

"1. Whether the Court erred by finding Appellant at fault in determining which party should be granted the divorce.

"2. Whether the Trial Court abused its discretion to. Appellant's prejudice when it considered fault on the issues of property division, alimony and child support.

"3. Whether the Trial Court abused its discretion by refusing to treat Appellee's increased earning capacity as 'property' under Section 20–2–114, W.S.1977 subject to equitable distribution or to otherwise equitably compensate Appellant for her contribution to his education and increased earning capacity.

"4. Whether the Court abused its discretion in refusing to grant Appellant adequate maintenance alimony or adequate child support.

"5. Whether the Court erred in failing to award Appellant's attorney's fees."

Appellant, Jeannine Marie Grosskopf, and appellee, Loren M. Grosskopf, were married August 17, 1968, while attending college in Wisconsin. Appellant was a junior and appellee was a sophomore at the time of the marriage. Both were employed part time. Appellant graduated with a degree in special education one year before appellee and went to work full time supporting the family during appellee's senior year. After graduation, appellee obtained a teaching assistantship at the University of Wyoming. The parties moved to Wyo-

ming; appellant worked full time and appellee worked part time while attending the University of Wyoming and obtained his masters degree in accounting.

Following graduation, appellee obtained employment at Cody, Wyoming, and the parties established their home there. Three children were born of the marriage. At the time of the divorce, the children were 11, 5, and 2 years of age. After twelve years, there were marital problems and difficulties which the parties were unable to resolve. Considerable testimony was adduced at the trial by both parties concerning the problems in their marriage, fault and the cause of these difficulties. The evidence established, and the parties generally agreed, that the differences existing between them were such that there was no prospect for reconciliation.

On October 12, 1980, after a particularly bitter dispute, appellee separated from appellant. Two days later this divorce action was initiated by appellee. Appellant took the three children of the marriage, traveled to Wisconsin where she could be with relatives and friends, and stayed approximately five weeks. She returned to Cody, Wyoming at Thanksgiving time, attempted to reconcile and resolve the problems of the marriage, but that was unsuccessful. On December 19, 1980, appellant moved with the children to Appleton, Wisconsin, where they presently reside.

Appellee was successful in his employment and his career. At the time of filing the divorce, his gross annual earnings were approximately $40,500, and, in addition, he received bonuses and earned some money in the stock market. His net take-home pay was approximately $2,150 per month. The parties owned their family home with an equity of approximately $40,577.40, had acquired other assets, including cash and stocks of approximately $31,804, and liabilities as of the date of their separation in the amount of $44,784. An expert, employed by appellant, testified that appellee's masters degree in accounting was marital property, capable of division between the parties; that it had a present value of $105,400; and that a fair award to each party would be $74,741.50 and child support in the approximate amount of $1,359 per month.

The court entered a judgment and decree in which it awarded custody of the children to appellant, subject to the right of appellee to have the children on alternate holidays, four weeks during the summer until the children became six years of age, and six weeks during the summer thereafter. It required appellee to pay $250 per month child support per child, or a total of $750 per month, divided the property between the parties in such a manner that appellant received $36,190.70 and appellee received a like amount but was also required to satisfy the debts of the parties existing at the date of separation which resulted in appellee's being required to pay $8,593.30. The final result was that appellant was awarded $36,190.70 in cash and appellee was left with a net liability of $8,593.30. The court declined to award to appellant either alimony or attorneys fees.

WAS THERE ERROR IN FINDING APPELLANT AT FAULT AND GRANTING DIVORCE TO APPELLEE?

■ Appellant contends that, upon the evidence presented, the court should not have found appellant at fault and therefore should not have granted the divorce to appellee. Appellee began this action by filing a complaint for divorce. Appellant, in her answer and counterclaim, prayed that divorce be granted to her. With respect to grounds or causes for divorce, § 20-2-104, W.S.1977, provides that:

"A divorce may be decreed by the district court of the county in which either party resides on the complaint of the aggrieved party on the grounds of irreconcilable differences in the marital relationship."

As to the grounds for divorce, the statute requires proof only of "irreconcilable differences" to permit the court to award a decree of divorce. It matters not which party was at fault in bringing about the differences which cannot be reconciled. All that is required is that the irreconcilable differences exist.

Section 20–2–104, supra, provides that the divorce may be decreed upon " * * * the complaint of the aggrieved party * * *." To "aggrieve," is to give pain, sorrow, trouble, or inflict injury. Webster's Third International Dictionary (1961).

Both parties may be "aggrieved." Either may bring an action for divorce and obtain a decree granting a divorce. However, where each party seeks the decree of divorce, the court then must determine to whom the divorce should be granted. In making that determination, the court may consider the fault of the respective parties, the equities involved, the effect of the divorce upon the parties and the children, and all of the other facts and circumstances of the case. There is no fixed rule for determining this question, which in the final analysis involves a large discretion on the part of the trial court.

Here, the trial court found, and stated in its decision letter,

" * * * that the greater degree of fault for the breakup of the marriage rests with the Defendant [appellant] rather than the Plaintiff [appellee]. * * * "

Appellant contends the evidence does not support that finding. In reviewing that evidence,

" * * * we must, on appeal, assume that the evidence in favor of the successful party is true, leaving out of consideration entirely evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it. * * * "

Craver v. Craver, Wyo., 601 P.2d 999, 1001 (1979).

Reviewing the facts in this light, we find that appellee was successful and apparently secure in his employment at Cody, Wyoming. Appellant was dissatisfied with their lifestyle, was insistent that the parties move from Cody, Wyoming, to a metropolitan area or to Wisconsin, where her family and relatives resided. She wanted appellee to quit his job. The parties had built a new home on a golf course and she was dissatisfied with the home and wanted to sell it. She decided to practice celibacy during the last two years of the marriage. There were occasions when appellant had packed the car, determined to leave appellee, and heated arguments resulted. Appellee's occupation occasionally required that he travel. The last time that occurred before separation, appellant took the children and traveled to Bozeman, Montana, leaving appellee a note which he found when he returned to an empty house. When appellant returned from Bozeman, Montana, there was a bitter argument between them. Following this argument, appellant took the children out of school, traveled to Wisconsin where she stayed five weeks, then returned to Cody, Wyoming, around Thanksgiving time. There was an effort by the parties to reconcile which was unsuccessful. Appellant then decided that it was more important that the children live in Wisconsin near their relatives than near their father, and she moved with them to Wisconsin and established a permanent residence.

Although appellant offered evidence to support a position that she was not at fault for the divorce, that evidence cannot, on appeal, be considered by us. To hold for appellant under our rules would require that we find that the court was wrong as a matter of law. This we cannot do, for here the evidence supporting the court's decision was substantial. There was no error in awarding the divorce to appellee.

WAS THERE ERROR IN CONSIDERING FAULT OR DID THE COURT ABUSE ITS DISCRETION IN THE DIVISION OF PROPERTY, AWARD OF CHILD SUPPORT, REFUSAL TO AWARD ALIMONY AND ATTORNEYS FEES?

The court, in its decision letter, makes it clear that it considered fault in settling the rights and duties of the parties resulting from their marriage and divorce and in dividing their property and considering alimony and attorneys fees. In its decision letter of November 12, 1981, the court stated,

"* * * it is the Court's opinion that the greater degree of fault for the breakup of the marriage rests with the Defendant rather than the Plaintiff. * * *"

Considering property rights,

"* * * the Court must and has taken into consideration the fact that the dissolution of the marriage was caused primarily by the Defendant's insistence upon removing herself and her children to the state of Wisconsin instead of remaining with her husband in Cody, Wyoming. * * *"

"* * * Again the question of alimony and Defendant's entitlement to it in light of her actions in leaving the family home and the property settlement which the Court has already affected [sic] must be taken into consideration. * * *"

 With the enactment of § 20-2-104, W.S.1977, supra, parties could obtain a divorce, without regard to fault, upon proof of irreconcilable differences. Enactment of this statute changed only the grounds for divorce. Although some states, upon adopting no-fault grounds for divorce, also adopted legislation providing for no-fault disposition of property and determination of other rights, Wyoming declined to do so. The statutes and law in existence governing division of property, alimony, and attorneys fees prior to the adoption of legislation providing no-fault grounds for divorce, therefore, remain in effect today. Section 20-2-114, W.S.1977,[1] provides that in making a just and equitable distribution, the court should "consider the merits" of the respective parties. "Merits" is defined in Webster's Third International Dictionary (1961) as "intrinsic rights and wrongs of a legal case as determined by matters of substance in distinction from matters of form." Merit is deservedness, goodness.

The courts are close to being equally divided on the question of whether legislation adopting no-fault grounds for divorce, without more, also requires that there be a no-fault distribution of property and determination of the parties' rights. A small majority, with which we agree, holds that the enactment of a no-fault divorce statute which does no more than provide no-fault grounds for divorce, does not modify the traditional, existing grounds for determining child custody, support, alimony, attorneys fees, and division of property. *Huggins v. Huggins*, 57 Ala.App. 691, 331 So.2d 704 (1976); *Peterson v. Peterson*, 308 Minn. 365, 242 N.W.2d 103 (1976); *Novlesky v. Novlesky*, N.D., 206 N.W.2d 865 (1973); *Kretzschmar v. Kretzschmar*, 48 Mich.App. 279, 210 N.W.2d 352 (1973).

 Our prior decisions indicate that fault has always been a consideration in adjusting the rights of the parties to a marriage being dissolved. Thus, we have said that although the controlling element in awarding alimony is the ability of the husband to pay, yet other matters may be considered in making the determination. *Hendrickson v. Hendrickson*, Wyo., 583 P.2d 1265 (1978). And quoting from another case with approval in *Storm v. Storm*, Wyo., 470 P.2d 367 (1970), we stated that a spouse who had chosen to abandon the marriage and all obligations would be entitled to be continuously supported in the future only in unusual circumstances. We have held that a settlement of the rights of the respective parties must be just and equitable, and awarding less than one-half of the property to the wife may be just and equitable under the circumstances of a par-

---

1. Section 20-2-114, W.S.1977, in existence at the time of filing the complaint in this case, provided:

"In granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired, and the burdens imposed upon the property for the benefit of either party and children. The court may decree to the wife reasonable alimony out of the estate of the other having regard for his ability and may order so much of his real estate or the rents and profits thereof as is necessary be assigned and set out to either party for life, or may decrée a specific sum be paid by him." We note that this statute was amended by ch. 20, § 1, Session Laws of Wyoming 1982. The only change made was to allow payment of alimony to be decreed to either party.

ticular case, *Beckle v. Beckle*, Wyo., 452 P.2d 205 (1969). Because a spouse has a greater right in jointly owned property acquired by the parties during the course of their marriage than in alimony to be paid in the future, we hold that, in addition to those factors set forth in the applicable statutes, the court may also consider fault of the respective parties together with all other facts and circumstances surrounding the dissolution of the marriage for purposes of determining division of property, alimony, and award of attorneys fees.

■ In *Paul v. Paul*, Wyo., 616 P.2d 707 (1980), we held that the trial court might refuse to hear testimony concerning fault in the circumstances of that case. There, the trial court advised the parties that he would not consider fault in a division involving the large amount of property. We said in *Paul v. Paul* that,

" * * * When there are adequate assets to comfortably provide for both of the parties, the trial court does not abuse its discretion when it refuses to permit the parties to air their dirty laundry in court." 616 P.2d at 715.

We also said that,

" * * * The trial judge has great discretion in dividing the property and he is not to use the property division to punish one of the parties. * * * " 616 P.2d at 715, citing *Storm v. Storm*, supra, 470 P.2d 367.

*Paul v. Paul* stands for the principle that in certain circumstances the court may, in its discretion, refuse to hear evidence of fault; and that, in any event, such evidence may not be considered by the court to punish one of the parties, but only to insure that the property division is just and equitable under all of the facts and circumstances of the case.

Considering now, first, the division of property, we note that,

" * * * As an appellate court, we consider that our power to disturb a property settlement fixed by a trial judge is limited indeed. There must be a clear abuse of discretion before we will upset or adjust such a settlement. We con-

sider 'abuse of discretion,' to be such abuse as shocks the conscience of the court. It must appear so unfair and inequitable that reasonable persons could not abide it." *Paul v. Paul*, supra, at 714. See also, *Kane v. Kane*, Wyo., 577 P.2d 172 (1978).

In this case the parties agreed in writing upon a division of their personal property. At the time the decree of divorce was entered, their home had been sold. There was received cash from the sale of the home in the amount of $40,577.40, the parties had, in addition, cash and stocks in the amount of $31,804, and their total indebtedness was $44,784. The court awarded each of the parties one-half of the cash received from the sale of their home, one-half of the value of the cash and stock they had, and ordered appellee to pay the indebtedness of the parties in the amount of $44,784. The effect of this decree was an award to appellant of $36,190.70 and an imposition of a net liability upon appellee in the amount of $8,593.30.

■ The division of property was unequal. Appellant was left with $36,190.70 in cash; appellee was left with a debt of $8,593.30. There was no award of alimony nor an award of attorneys fees. We have said that award of attorneys fees is a part of the property division and within the discretion of the trial court. *Bereman v. Bereman*, Wyo., 645 P.2d 1155 (1982). The allowance or disallowance of alimony is also a matter which lies within the discretion of the trial court. *Biggerstaff v. Biggerstaff*, Wyo., 443 P.2d 524 (1968). In its decision letter considering a request for alimony, the court stated,

" * * * Again the question of alimony and Defendant's entitlement to it in light of her actions in leaving the family home and the property settlement which the Court has already affected [sic] must be taken into consideration. In light of these things, the Court can neither justify nor can the Plaintiff afford to pay to the Defendant the sums requested by her at the time of trial, *particularly in*

*light of the property division which the Court has made."* (Emphasis supplied.)

 We recognize that there are cases in which alimony is a necessity. However, under ordinary circumstances it should be recognized that one spouse should not have a perpetual claim on the earnings of the other; that divorce, insofar as possible should sever the ties of the parties and they should begin to start their lives anew. Thus, there has been a tendency away from alimony, and if some additional sum is necessary to adjust equities between the parties, it is better that that be done with an award of property. *Young v. Young,* Wyo., 472 P.2d 784 (1970); *Paul v. Paul,* supra. Here the court awarded appellant a substantial amount of cash while placing the burden of an $8,593.30 debt upon appellee. Appellant is a college graduate with a degree in special education. She has been employed as a teacher and in other occupations and is capable of functioning adequately in the job market. She claims she should be allowed to stay home, not be employed, and devote herself to raising the children. Yet that is not what occurred when the parties were living together. The oldest of the children was with babysitters through most of her growing up before entering school. Social reports indicate she suffered no impairment as a result of this experience. The court awarded appellant custody of the children subject to provisions for visitation by appellee, and awarded child support in the sum of $250 for each child or a total of $750 per month. Appellee's take-home pay at the time was $2,150 per month, and the court noted that appellee's requirements for his living indicated that the amount awarded was about all that could be justified. Award of child support also is a matter addressed to the discretion of the court and will not be disturbed on appeal except for a clear abuse. *Chorney v. Chorney,* Wyo., 383 P.2d 859 (1963).

 Considering all of the facts and circumstances of this case, the merits of the parties, their respective educations, college degrees and abilities, and all other matters, we cannot find an abuse of discretion in the manner in which the court divided the property of the parties, awarded child custody and support, and declined to award alimony or attorneys fees.

## WAS THERE ERROR İN NOT TREATING APPELLEE'S INCREASED EARNING CAPACITY RESULTING FROM HIS ADVANCED DEGREE AS PROPERTY TO BE DIVIDED BETWEEN THE PARTIES UNDER § 20–2–114, W.S.1977?

These parties were married while both were attending college, appellee being a sophomore and appellant being a junior at the time. During the second year of marriage, when both were attending college, appellee was employed full time working an 11:00 p.m. to 7:00 a.m. shift, and testified that he earned five times as much as appellant who was then employed part time. The next year, appellant had graduated and she worked full time while appellee worked part time. The following year, appellee sought his masters degree at the University of Wyoming; and appellant again worked full time while appellee had a teaching assistantship which paid his tuition, books, and a small amount of money. Appellant claimed that her contribution to appellee's education over and above that of appellee was approximately $13,600. Appellee testified that with his employment and loans obtained, he would have put himself through college without any contribution, had he not been married. The court found that appellant's contribution over and above that of appellee was, at a maximum, approximately $2,400. There was evidence to support the trial court's finding in this regard, and it will not be disturbed on appeal.

The trial court, in its decision letter, concerning appellee's advanced degree, stated as follows:

" * * * it is the holding of the Court not only does the Plaintiff's masters degree in accounting have little or no value according to the testimony presented at the time of trial but that the same is not a property right to be divided between the parties * * *."

A witness called by appellee, employed in the accounting field, testified that a masters degree in accounting had value only if the holder of that degree intended to teach or work in the academic community. He testified that persons passing the certified public accountant examination are employed at the same wage in the private sector irrespective of whether their degree is a bachelors or a masters degree. The court accepted that testimony, as was its right, and considered the advanced degree in appellee's present occupation of little or no value.

The court, in dealing with this question further in its decision letter, stated that in considering the educational degree, the length of the marriage, and other marital circumstances surrounding the same, it

" * * * must acknowledge the wife's contribution by way of a settlement agreement which will adjust between the two parties * * * and in the Court's opinion the wife has been more than compensated for this by reason of the property division [herein]. * * * "

Section 20-2-114, W.S.1977, requires that the court shall make such disposition of the *property* of the parties as appears just and equitable. We have held that,

" * * * With respect to future property, we think the rule must be that, when a court divides property incidental to the granting of a divorce, the court is limited by the amount of property in its hands for division and a mere expectancy is not subject to division. * * * " *Storm v. Storm*, supra, 470 P.2d 367, 370.

The court went on, stating that an inheritance to be received was future property and that,

"[i]n speaking of future property, we are referring to a prospective expectancy of an estate which may come into being in the future as distinguished from future benefits to be derived from an estate already in existence. Courts have frequently distinguished between assets earned during coverture and those to be acquired in the future." Id. at 370.

Appellant contends that the advanced degree in accounting is property in existence which will result in future benefits. The degree itself may or may not result in future benefits. That depends upon appellee's abilities, diligence, success, or failure, and whether he chooses to work in this field. But, the threshold question is whether the degree is property at all that may be subject to division under our statute.

Most courts which have considered this question have held, and we agree, that an educational degree is not property because,

" * * * [i]t does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of that term." *In re Marriage of Graham*, 194 Colo. 429, 574 P.2d 75, 77 (1978).

While the college degree and the increased earnings that might be derived therefrom in the future are not property, yet there are equities to be adjusted between the parties and they will vary with the facts and circumstances of each particular case. Thus, the parties seeking divorce may be from a marriage that lasted many years in which substantial property was accumulated. An equitable division of that property should result in each party realizing the benefits of the college degree. On the other hand, where the working spouse supports the family while the other attends college, obtains an advanced professional degree, and promptly seeks a no-fault divorce, there is no property accumulated to divide. The inequity of a divorce with no award to the working spouse is

obvious. In this situation, an award to that spouse which would afford an opportunity to obtain the same degree under the same circumstances, or in the alternative, a sum of money equal to that benefit seems equitable; and cases falling between these two extremes should be adjusted accordingly. In resolving these questions, courts are,

"* * * guided by equitable principles in determining the rights and liabilities of the parties upon a dissolution of the marriage relationship. * * * [And they have] inherent power to grant equitable relief 'as the facts in each particular case and the ends of justice may require.' * * *" *DeLa Rosa v. DeLa Rosa*, Minn., 309 N.W.2d 755, 758 (1981).

Some courts have awarded the working spouse the amount by which her contribution to the marriage in money exceeded that of the spouse attending college, *DeLa Rosa v. DeLa Rosa*, supra, while others have awarded something they thought just and equitable in lieu of property termed alimony in gross, which was $15,000 in *Moss v. Moss*, 80 Mich.App. 693, 264 N.W.2d 97 (1978). An Iowa court, after holding that the potential for increased earning capacity was an asset for distribution, awarded a wife who had supported her husband while he obtained a law degree, the sum of $18,000; and the award was upheld on appeal, the court noting that the husband had testified that the education had cost at least $14,000. *In re Marriage of Horstmann*, Iowa, 263 N.W.2d 885 (1978).

Applying the above principles to the instant case, we note that these parties were married for twelve years, and the wife received some of the benefit from her husband's degree. The wife also has a degree; and during her senior year the husband worked full time, earned more money than she, and contributed toward her obtaining that degree. During his senior year, she worked full time and also during the year that he obtained his masters degree, but did not provide all of the support for the family. The husband, then also worked part time and contributed to the support of the family. As the husband testified, he would have put himself through school with his employment and loans, whether married or not. The trial court, in giving its decision, stated that it had made allowance for the advanced degree in the award of property to the wife. She was awarded in excess of $36,000 in cash, and he was left obligated to pay in excess of $8,000 in debt. We have consistently said:

"* * * The function of this court is not to constitute a reconsideration or retrial of the district court's decision unless the same is clearly unjust and inequitable * * *." *Kane v. Kane*, supra, 577 P.2d 172, 174.

The trial court exercises a broad discretion in adjusting the rights and obligations of parties upon the dissolution of their marriage. We will not disturb the decision of the lower court unless we can say that that discretion was abused, that the result was clearly unjust and inequitable. We cannot make that finding in this case. The judgment, therefore, is affirmed.