# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 23

OCTOBER TERM, A.D. 2013

*February 20, 2014*

DANIEL L. STEVENS,

Appellant
(Plaintiff),

v.

S-13-0125

KACIE J. STEVENS,

Appellee
(Defendant).

*Appeal from the District Court of Park County*
*The Honorable Steven R. Cranfill, Judge*

*Representing Appellant:*
John P. Worrall of Worrall & Greear, P.C., Worland, WY

*Representing Appellee:*
George Simonton, Cody, WY

*Before KITE, C.J., and HILL, VOIGT\*, BURKE, and DAVIS, JJ.*

*\*Justice Voigt retired effective January 3, 2014.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]   In his appeal from a divorce decree, Father challenges the district court's property division, alimony award, child support determination, and custody award.  We affirm.

## ISSUES

[¶2]   Father states the following five issues for our consideration:

1. The District Court abused its discretion in the division of property between the parties in this matter.

2. The District Court abused its discretion in determining to award alimony to the Appellee.

3. The District Court abused its discretion in failing to determine that the Appellee was voluntarily under employed (sic) as a hostess at a local restaurant rather than at her chosen profession as a Certified Public Accountant and in other ways in calculating child support.

4. The District Court abused its discretion in determining the custody and visitation of the minor children in this matter.

5. The District Court abused its discretion in reaching its decision in this matter as a whole.

## FACTS

[¶3]   Daniel L. Stevens (Father) and Kacie J. Stevens (Mother) were married in October of 2004.  After marrying, Mother earned her Certified Public Accountant (CPA) degree, and worked as an accountant for about nine months at the beginning of the marriage. After the couple had two children, Mother became a stay-at-home mom.

[¶4]   Father filed for divorce in November of 2011.  Mother and the children, ages 6 and 3 at the time of trial, moved into a rental home owned by Mother's father.  Father exercised his agreed upon visitation.  To produce some income, Mother worked as a waitress in a Cody, Wyoming restaurant.

[¶5]   The parties' relationship devolved to the point that communication became difficult.  Even the longtime relationship between their families became strained.  Unable to reach a settlement, the parties proceeded to trial in November of 2012.  The trial lasted three days, and a divorce decree was entered by the trial court on March 15, 2013.  In it,

1

the court awarded Mother "physical custody" of the children, with visitation for Father. The court revised its decree several times to reflect its final decision. An accidental omission was made regarding Father's summer visitation. Father was granted six weeks per summer of visitation, as well as every other weekend, and one weekday. To calculate child support, the court calculated Father's monthly income at $23,670.22 and Mother's to be $934.41. Father's income included $9,090.91 he paid as part of a business succession plan. Using these figures, the court ordered Father to pay child support in the amount of $2,275.69 per month. In the division of marital property, the court awarded Father the marital home and its debt. The home, valued at $403,100.00, was subject to a mortgage of $279,000.00. After further dividing the parties' investment accounts and other property, the court declared Father owed Mother $135,099.00 in cash, and ordered him to pay that amount in 36 monthly installments of $3,750.00. Finally, the court also ordered Father to pay alimony of $2,000.00 per month for five years.

[¶6]     Father timely filed his notice of appeal.

## STANDARD OF REVIEW

[¶7]     The overall standard to be used in this case is abuse of discretion. Specifically to the issues, we have stated as follows regarding the division of marital property:

> The district court has broad discretion to divide marital property in a divorce. *Root v. Root*, 2003 WY 36, ¶ 8, 65 P.3d 41, 44 (Wyo. 2003). *See also*, Wyo. Stat. Ann. § 20-2-114 (LexisNexis 2009). We review the district court's disposition of marital property using the abuse of discretion standard. *Sweat v. Sweat*, 2003 WY 82, ¶ 6, 72 P.3d 276, 278 (Wyo. 2003). "An abuse of discretion occurs when the property disposition shocks the conscience of this court and appears to be so unfair and inequitable that reasonable people cannot abide it." *Hall v. Hall*, 2002 WY 30, ¶ 12, 40 P.3d 1228, 1230 (Wyo. 2002). In determining whether the district court abused its discretion, we consider only the evidence of the successful party and grant to that party every favorable inference that can be drawn from the record. *Sweat*, ¶ 6, 72 P.3d at 278. *See also*, *Welch v. Welch*, 2003 WY 168, ¶ 4, 81 P.3d 937, 938 (Wyo. 2003).

*Sanning v. Sanning*, 2010 WY 78, ¶ 8, 233 P.3d 922, 923 (Wyo. 2010).

[¶8]     The abuse of discretion remains the same as to the remaining issues – child custody, visitation, child support, and alimony – and regarding these we have stated:

2

Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court. *Scherer v. Scherer*, 931 P.2d 251, 253-54 (Wyo. 1997); *Triggs v. Triggs*, 920 P.2d 653, 657 (Wyo. 1996); *Basolo v. Basolo*, 907 P.2d 348, 352 (Wyo. 1995). It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. *Scherer*, 931 P.2d at 254; *Rowan v. Rowan*, 786 P.2d 886, 890 (Wyo. 1990); *see also Gurney v. Gurney*, 899 P.2d 52, 55 (Wyo. 1995); and *Fink v. Fink*, 685 P.2d 34, 36 (Wyo. 1984). The determination of the best interests of the child is a question for the trier of fact. "We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle." *Fink*, 685 P.2d at 36.

A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. *Pinther v. Pinther,* 888 P.2d 1250, 1252 (Wyo. 1995) (*quoting Dowdy v. Dowdy*, 864 P.2d 439, 440 (Wyo. 1993)). Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. *Triggs*, 920 P.2d at 657; *Cranston v. Cranston*, 879 P.2d 345, 351 (Wyo. 1994). Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. *Jones v. Jones*, 858 P.2d 289, 291 (Wyo. 1993). Similarly, an abuse of discretion is present "'when a material factor deserving significant weight is ignored.'" *Triggs*, 920 P.2d at 657 (quoting *Vanasse v. Ramsay*, 847 P.2d 993, 996 (Wyo. 1993)).

*Bingham v. Bingham,* 2007 WY 145, ¶ 10, 167 P.3d 14, 17-18 (Wyo. 2007).

## DISCUSSION

### *Property Division*

[¶9]   Father contends that the district court abused its discretion when it divided the parties' property in two specific areas. First, Father argues that he was improperly required to reimburse Mother for $33,000.00 in equity in the marital home. He contends

that Mother had already realized that equity when the parties originally refinanced the mortgage, and if he is made to pay, Mother will twice receive her share of the equity. Second, Father contends that the district court failed to consider the tax consequences of awarding him retirement accounts and giving Mother dollar-for-dollar credit against such awards. Mother responds that the overall distribution was not unfair.

[¶10] In property division cases we look to Wyo. Stat. Ann. § 20-2-114 (LexisNexis 2013), which states:

> **§ 20-2-114. Disposition of property to be equitable; factors; alimony generally.**
>
> (a) ... [I]n granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children. The court may decree to either party reasonable alimony out of the estate of the other having regard for the other's ability to pay and may order so much of the other's real estate or the rents and profits thereof as is necessary be assigned and set out to either party for life, or may decree a specific sum be paid by either party.

Also regarding property division, this Court stated that

> [t]he trial court possesses a great amount of discretion in dividing marital property. A just and equitable division of property is just as likely not to be equal. *Carlton v. Carlton*, 997 P.2d 1028, 1032 (Wyo. 2000). Although the trial court cannot divide the property in such a way that it would punish one of the parties, it may consider fault of the respective parties, together with all other facts and circumstances surrounding the dissolution of the marriage in dividing a couple's marital assets. 997 P.2d at 1034. We are required to limit our review of the record to an evaluation of whether the trial court's decision was supported by sufficient evidence, and we afford to the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. *Id*. Findings of fact not supported by the evidence, contrary to the evidence, or

4

against the great weight of the evidence cannot be sustained. *Id*.

*Hall v. Hall,* 2002 WY 30, ¶ 14, 40 P.3d 1228, 1230 (Wyo. 2002).

[¶11] "[O]n appellate review this Court evaluates whether the district court's property division is equitable from the perspective of the overall distribution rather than from a narrow focus on the effects of any particular disposition." *Walters v. Walters,* 2011 WY 41, ¶ 7, 249 P.3d 214, 222 (Wyo. 2011). In the instant case, the divorce decree divides the parties' property as follows:

> 11. Defendant is entitled to the 2010 Suburban, subject to the debt thereon, the EDJ Joint Account in the amount of $5,534.55, her Roth IRA in the amount of $6,334.68, Plaintiff's Edward Jones Account in the amount of $11,217.27 and her Edward Jones Account in the amount of $33,000.00, totaling $85,461.50.

> 12. Plaintiff owes Defendant $135,099.48. The Plaintiff will pay the Defendant the sum of $3,750.00 per month for thirty-six (36) months starting on the 10th of April, 2013 in order to complete this obligation to her. There shall be no interest levied on this obligation. Plaintiff will pay that amount on a monthly basis at the same time the present alimony payment and the child support payment are due. This obligation will not be extinguished by Defendant's remarriage, if any.

> 13. Plaintiff is entitled to the property at 73 Wild Horse Road valued at $403,100.00, the 2005 GMC Sierra, the 2006 Apex, the new snowmobile, his Roth IRA in the amount of $62,254.86, his 401(k) in the amount of $7,617.52, his Roth IRA in the amount of $34,002.03, his EDJ Profit Sharing account in the amount of $50,209.78, his Limited Partnership in the amount of $13,282.18 and his HSA in the amount of $10,122.91, totaling $610, 814.28.

[¶12] Looking at the district court's property division as a whole, Mother was awarded $85,461.50 in marital assets, plus $135,099.48 in cash due from Father, totaling $220,560.98. Father was awarded a grand total of $610,814.28 marital assets and cash.

[¶13] From our careful review of the trial transcript and record, and under the strict edicts of our standard of review, we conclude that the trial court did not abuse its

discretion. In considering only the evidence of Mother and ignoring the evidence of Father, as our standard of review directs, while granting Mother every favorable inference that can be drawn from the record, we conclude that the district court's property division as a whole, was proper.

*Alimony*

[¶14] Next, Father takes issue with the district court's alimony award to Mother. Father contends that the court abused its discretion because alimony is designed for a former spouse that is unable to adequately provide for herself. Father insists that the instant case is to the contrary, and because Mother is a CPA, has maintained a tax and bookkeeping practice, and works as her father's accountant, alimony is patently unfair. Mother responds that the district court properly awarded alimony to equalize the disparate property distribution, and that the court was correct in its findings that it would take Mother time to realize her earning potential while caring for the couple's children, and that there is a vast difference in Mother's and Father's earning potential. Mother also points out that Father has the ability to pay.

[¶15] Our discussion in *Belless v. Belless*, 2001 WY 41, ¶ 8, 21 P.3d 749, 751 (Wyo. 2001), is instructive on the alimony issue:

> The purpose of alimony is to provide a post-divorce substitute for the support provided to a spouse during the marriage. *Johnson*, 11 P.3d at 951. It is for the support and maintenance of a former spouse who is unable to adequately provide for himself or herself. *Id.* An award of property is a preferable modern substitute for alimony. *Id.* While in some cases alimony may be a necessity, "under ordinary circumstances it should be recognized that one spouse should not have a perpetual claim on the earnings of the other; that divorce, insofar as possible should sever the ties of the parties and they should begin to start their lives anew." *Grosskopf v. Grosskopf*, 677 P.2d 814, 821 (Wyo. 1984). When alimony is awarded in the absence of a stipulated settlement between the parties, the record must reflect some evidence that alimony, with its special features, is needed. *Johnson*, 11 P.3d at 951. If the intent is to adjust the equities between the parties at the time of the divorce, property division, which may encompass a series of payments, is the preferable method. *Id.*
>
> However, this court has also held on more than one occasion that " 'there are times, of course, when a trial court may see fit to allow a wife less property than her fair share

6

would be if property only were involved; and in order to even up the balance, the court may provide for alimony payments.'" *Id.* (quoting *Young v. Young*, 472 P.2d 784, 787 (Wyo. 1970)). We have held that, in determining whether a spouse is entitled to be awarded alimony, the trial court considers objective criteria including "'the ability of the payor spouse to pay and the necessity of support of the payee.'" *Johnson*, 11 P.3d at 950 (quoting *Neville v. Neville*, 8 P.3d 1072, 1073 (Wyo. 2000)).

Here, the trial court stated in pertinent part:

[T]here is little to no way to adjust the division of real and personal property to accommodate potential income differences. … Given the fact that [Mother] will be the primary care giver for the two young children, with no significant business experience or established employment, and the obvious disparate income potential, the Court believes alimony is appropriate. The Court will therefore adopt the asset distribution reflected in Defendant's Exhibit 4 and additionally award alimony in the amount of $2,000.00 per month for a term of five (5) years.

The Court believes this amount of spousal support will allow [Mother] to provide for herself for a reasonably short period of time while developing an alternative source of income based on her training. [Father] has demonstrated the ability to pay alimony and the Court finds alimony to be just and equitable considering the condition in which both parties will be left after this divorce. Property settlement is clearly favored in Wyoming, however, the available assets do not provide this Court with the opportunity to place [Mother] in a position to adequately provide for herself, whereas alimony remedies this issue. See *Johnson v. Johnson*, 11 P.3d 948 (Wyo. 2000); *Muller v. Muller*, 838 P.2d 198 (Wyo. 1992).

[¶16] Contrary to Father's assertion that Mother "chose" not to be employed, and that the trial court "rewarded" Mother, our review of the record explains the court's reasoning. Father's monthly income was disproportionate to Mother's, and although she was a licensed CPA, at the time of the divorce she had no significant business experience or established employment. In fact, her license was obtained after the marriage, and before committing to work inside the home she only worked as a full-time CPA for approximately six months during the parties' marriage. Mother attempted to find CPA

work in Cody prior to trial but was not successful. Indeed, as Father points out, Mother's earning potential is there. However, as Mother also correctly points out, it is entirely within the discretion of the trial court to award alimony during a transition period wherein the party requesting alimony may gain special skills, education, **or experience** to enable the party to raise his or her earning capacity. *Hendrickson v. Hendrickson*, 583 P.2d 1265, 1268 (Wyo. 1978). Because of Mother's dedication as a stay-at-home mom the period allowed for alimony allows her to regain her ground as an employable CPA. Last but not least, of course, is Father's ability to pay. Father's monthly income at the time of trial was $23,670.22 compared to Mother's $934.41. Trial testimony proved Father had the ability to pay and no evidence from the record suggests otherwise. The trial court smartly tailored its alimony award with all of the above in mind and limited it to five years.

[¶17] Based upon the earning potential of each party we conclude that $2,000.00 per month for five years is not beyond the bounds of reason. We are not persuaded that the trial court failed to exercise sound judgment or otherwise abused its discretion by providing continuing support to the wife through an award of alimony.

## *Child Support*

[¶18] Father contends that the district court abused its discretion in the calculation of child support by failing to impute income to Mother. Again, Father argues that Mother refuses to work as a CPA in Cody although such work is available and that such work can earn a starting salary of $50,000.00. Also, Father contends the court erred when it included in his income the $9,090.91 he paid monthly as part of a business succession plan.

[¶19] While the initial determination of child support amounts is governed by statute, matters concerning child support, including decisions to impute income, are left to the discretion of the district court. *Barrett-Oliver v. Quast,* 2013 WY 71, ¶ 8, 302 P.3d 909, 911 (Wyo. 2013) (quoting *Durham v. Durham,* 2003 WY 95, ¶ 8, 74 P.3d 1230, 1233 (Wyo. 2003)).

[¶20] Pursuant to Wyo. Stat. Ann. § 20-2-307(b) (LexisNexis 2013):

> (b) A court may deviate from the presumptive child support established by W.S. 20-2-304 upon a specific finding that the application of the presumptive child support would be unjust or inappropriate in that particular case. In any case where the court has deviated from the presumptive child support, the reasons therefor shall be specifically set forth fully in the order or decree. In determining whether to deviate

from the presumptive child support established by W.S. 20-2-304, the court shall consider the following factors:

. . . .

(xi) Whether either parent is voluntarily unemployed or underemployed. In such case the child support shall be computed based upon the potential earning capacity (imputed income) of the unemployed or underemployed parent. In making that determination the court shall consider:

(A) Prior employment experience and history;

(B) Educational level and whether additional education would make the parent more self-sufficient or significantly increase the parent's income;

(C) The presence of children of the marriage in the parent's home and its impact on the earnings of that parent;

(D) Availability of employment for which the parent is qualified;

(E) Prevailing wage rates in the local area;

(F) Special skills or training; and

(G) Whether the parent is realistically able to earn imputed income.

[¶21] The first step in calculating child support is determining the parents' respective monthly net incomes. *Lauderman v. State*, 2010 WY 70, ¶ 7, 232 P.3d 604, 607 (Wyo. 2010). "Income" and "net income" are defined in Wyo. Stat. Ann. § 20-2-303(a) (LexisNexis 2013) as:

(ii) "Income" means any form of payment or return in money or in kind to an individual, regardless of source. Income includes, but is not limited to wages, earnings, salary, commission, compensation as an independent contractor, temporary total disability, permanent partial disability and permanent total disability worker's compensation payments, unemployment compensation, disability, annuity and retirement benefits, and any other payments made by any payor, but shall not include any earnings derived from overtime work unless the court, after considering all overtime earnings derived in the preceding twenty-four (24) month period, determines the overtime earnings can reasonably be expected to continue on a consistent basis. In determining income, all reasonable unreimbursed legitimate business expenses shall be deducted. Means tested sources of income

9

such as Pell grants, aid under the personal opportunities with employment responsibilities (POWER) program, supplemental nutrition assistance program and supplemental security income (SSI) shall not be considered as income. Gross income also means potential income of parents who are voluntarily unemployed or underemployed;

(iii) "Net income" means income as defined in paragraph (ii) of this subsection less personal income taxes, social security deductions, cost of dependent health care coverage for all dependent children, actual payments being made under preexisting support orders for current support of other children, other court-ordered support obligations currently being paid and mandatory pension deductions. Payments towards child support arrearage shall not be deducted to arrive at net income[.]

[¶22] With these principles in mind the trial court analyzed Mother's work experience and history, as well as her education level and skill. Given that she obtained her license and then promptly had children and became a stay-at-home mom for almost eight years, her work experience was limited. However, as Father points out, her education level and skill remain. Yet, to comport with § 20-2-307(b)(xi)(C), the trial court took into consideration the children still living in Mother's home and how that impacted her ability to work. Father presented little to no evidence at trial to support his argument that deviation was appropriate in this case, pursuant to § 20-2-307(b)(xi)(D) (availability of employment) or § 20-2-307(b)(xi)(E) (prevailing wage rates). Certainly, any evidence Father did present did not meet his burden.

[¶23] Father also claims that the trial court improperly calculated his net income by including a monthly succession plan payment that amounted to $9,090.91 per month. In its calculations, the district court utilized Father's financial affidavit that he submitted to the court after trial on November 30, 2012. There, Father declared his net monthly income to be $14,469.53. In the "voluntary deductions" section, he included the $9,090.91 he paid for the business succession payment. In its calculation the district court added that amount back into Father's net monthly income, as well as other voluntary deductions Father made for Flex Benefit Plan, Disability Insurance, Life Insurance, and AD&D, for a net monthly income total for child support purposes of $23,670.22.

[¶24] The trial court did add those amounts back into Father's net income and in doing so, explained itself. The court stated in its decision letter that it decided to add back in the succession plan payment because testimony at trial indicated that the payment was going to end very soon, with only $57,142.84 left to be paid. This amounted to less than six months of making the succession plan payment. The court concluded that after that

six-month period Father's income would then rise to $23,670.22. The evidence presented at trial, taken in the light most favorable to Mother, supports the trial court's conclusion. We can find no abuse of discretion by the trial court

## *Custody and Visitation*

[¶25] The trial court's decision regarding custody and visitation of the two minor children was also an issue for Father. He argues on appeal that he took "the high road" and complimented Mother's parenting at trial whereas Mother and her witnesses said "nothing good" about him. He specifically challenges the district court's decision to give little weight to evidence from his custody evaluator, Dr. Dee Woolsten. The doctor opined that Father should receive custody (although Father only sought joint custody). Mother agrees with the court's decision, and notes that shared custody is disfavored when the parties are unable to communicate, as is the situation in the instant case.

[¶26] As we have consistently articulated, "This Court … does not reweigh evidence. Instead, we view the facts in the light most favorable to the prevailing party." *Hayzlett v. Hayzlett*, 2007 WY 147, ¶ 8, 167 P.3d 639, 642 (Wyo. 2007). In child custody determinations the district court must base its decision on the factors articulated in Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2013), which provides:

> (a) In granting a divorce, separation or annulment of a marriage or upon the establishment of paternity pursuant to W.S. 14-2-401 through 14-2-907, the court may make by decree or order any disposition of the children that appears most expedient and in the best interests of the children. In determining the best interests of the child, the court shall consider, but is not limited to, the following factors:
>> (i) The quality of the relationship each child has with each parent;
>> (ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;
>> (iii) The relative competency and fitness of each parent;
>> (iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;
>> (v) How the parents and each child can best maintain and strengthen a relationship with each other;

11

(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;

(viii) Geographic distance between the parents' residences;

(ix) The current physical and mental ability of each parent to care for each child;

(x) Any other factors the court deems necessary and relevant.

No single factor is determinative. *Hayzlett,* ¶ 10, 167 P.3d at 642. In fact, depending on the case, different factors will present a greater need for emphasis. The one constant is that the resolution must be in the best interests of the children in that particular family. *Id*. Indeed, custody is a "life-altering decision." *Reavis v. Reavis,* 955 P.2d 428, 431 (Wyo. 1998). To that end, we have said:

To determine whether a district court has abused its discretion, we must rely on the district court's articulation of the factors which were considered and how those factors support its conclusions.

To play fair, a trial judge relying on discretionary power should place on record the circumstances and factors that were crucial to his determination. He should spell out his reasons as well as he can so that counsel and the reviewing court will know and be in a position to evaluate the soundness of his decision.

Maurice Rosenberg, *Judicial Discretion of the Trial Court, Viewed From Above*, 22 Syracuse L. Rev. 635, 665-66 (1971). Unfortunately, we are provided scarce explanation for the custody arrangement ordered in this case; one which substantially deviates from the requests of the parties and is unique to the experience of this court.

*Id.*, 955 P.2d 431-32.

[¶27] Father contends that the trial court's decision against a shared custody arrangement was an abuse of discretion. As the district court observed, this Court maintains its distaste for shared custody arrangements. An important factor in a shared custody arrangement is the ability of the parents to cooperate and communicate. *Reavis*, 955 P.2d 432-33. Here, the lack thereof was in large part why the court concluded a shared custody arrangement was not in the children's best interest.

[¶28] The parties presented a significant amount of custody evidence, including a voluminous amount of trial testimony on both sides. Father testified on his own behalf and presented several friends, as well as his father, mother, brother, and sister. Mother also testified and presented her mother and father as witnesses on her behalf. Dr. Dee Woolston was also qualified as an expert and presented testimony. The district court considered testimony that was presented regarding a vulgar text message sent by Father to some of his clients and co-workers. Also, the trial court considered a single act of domestic violence that occurred early in the marriage when Father struck Mother, which Father admitted.

[¶29] With regard to Dr. Woolston's testimony, much of which favored Father, the trial court explained the little weight it gave to her testimony. Due to the doctor's "strong feelings" regarding the parties' attorneys, and also due to the doctor's misstatements on various topics regarding Mother, the trial court relied instead on the testimony presented by the parties and their other witnesses.

[¶30] Taking all of that testimony into consideration, and taking it in the light most favorable to Mother, we conclude there was no abuse of discretion regarding the custody determination.

## CONCLUSION

[¶31] There was no singular, or cumulative, abuse of discretion by the district court. The property division stands as does the award of alimony to Mother. Custody and child support both track the statutory guidelines provided. Any deficiencies in the initial decision letter were remedied by follow up addendums and the final divorce decree. The trial court's decision, in all aspects, is affirmed.