# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 8

OCTOBER TERM, A.D. 2015

*January 21, 2016*

TRACEY KAMM,

Appellant
(Plaintiff),

v.

S-15-0101

JASON KAMM,

Appellee
(Defendant).

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*
    Donna D. Domonkos of Domonkos Law Office, LLC, Cheyenne, WY.

*Representing Appellee:*
    Linda J. Steiner and Abigail E. Fournier of Steiner Law, LLC, Cheyenne, WY.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    Tracey Kamm appeals the district court's alimony decision, claiming that to deny her alimony was an abuse of the court's discretion.  We will affirm the district court.

## ISSUE

[¶2]    Tracy Kamm presents one issue for our review:

> The district court abused its discretion when it denied [her] request for alimony.

## STANDARD OF REVIEW

[¶3]    We review the district court's decision on alimony for abuse of discretion:

> There are few rules more firmly established in our jurisprudence than the proposition that disposition of marital property, calculation of income for child support purposes, and the granting of alimony are committed to the sound discretion of the district court.  *Johnson v. Johnson*, 11 P.3d 948, 950 (Wyo. 2000).  Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.  *Id*.; *Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998).  We must ask ourselves whether the trial court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious.  *Johnson*, 11 P.3d at 950.  In accomplishing our review, we consider only the evidence in favor of the successful party, ignore the evidence of the unsuccessful party, and grant to the successful party every reasonable inference that can be drawn from the record. *Id*.
>
>  *Opitz v. Opitz*, 2007 WY 207, ¶ 7, 173 P.3d 405, 407-408 (Wyo. 2007) (quoting *Belless v. Belless*, 2001 WY 41, ¶ 6, 21 P.3d 749, 750-751 (Wyo. 2001)).

*Levene v. Levene*, 2014 WY 161, ¶ 12, 340 P.3d 270, 273 (Wyo. 2014).

## FACTS

[¶4]    Jason Kamm (Husband) and Tracy Kamm (Wife) married in 2001.  Though their marriage did not produce any children, Husband adopted Wife's two children from a prior marriage.  Those children are now emancipated.  During the marriage, Husband worked as a physical therapist and Wife worked inside the home.  Wife suffers from a myriad of medical conditions, including PTSD, lupus, fibromyalgia, spinal arthritis, and depression.

[¶5]    In 2013, Wife filed for divorce.  She stayed in the marital home, while Husband paid the mortgage and other bills.  In February of 2014, the district court ordered Husband to pay alimony of $3,000.00 per month, as well as $3,000.00 in attorney's fees.  While the divorce was pending, Wife was denied Social Security disability and began working part-time.

[¶6]    The case proceeded to trial on November 12, 2014.  The court ruled as follows:

> Mr. Kamm appears to enjoy good health.  During the trial, the court heard substantial testimony about Mrs. Kamm's health.  The court finds that Plaintiff presented credible evidence that she has historically suffered from various medical conditions, including lupus, post-traumatic stress disorder (PTSD), and depression.  The Plaintiff did not present credible evidence, however, that her medical conditions are debilitating, or that they prevent her from seeking and obtaining employment.  Significantly, the Plaintiff did not present any testimony from a medical expert opining that Plaintiff is occupationally incapacitated or physically incapable of holding any job.  Plaintiff called two health care providers during the trial: Dr. Haug (a psychologist and expert on PTSD) and Stacy Davis (an acupuncturist).  Ms. Davis testified that she has treated the Plaintiff for over one year, and that she has seen improvement in the Plaintiff's condition over that time period.  She testified that Plaintiff has not experienced any "flare ups" or problems with her autoimmune disorders, and that her treatment focus has been on addressing Plaintiff's insomnia, anxiety and fatigue related to her PTSD.  Ms. Davis testified that she has seen an improvement in those areas as well.  Dr. Haug testified Plaintiff's PTSD presents a "significant disability" that does impact her ability to obtain employment.  Despite those limitations, however, Dr. Haug testified that PTSD can be managed "very well," and that

2

Plaintiff has the ability to find employment in a "very quiet, very predictable environment." In that regard, the court finds it significant that Plaintiff has previously demonstrated an ability to work in jobs outside of her home even after the traumatic events from her first marriage. Plaintiff testified that she met Defendant in 2001, while she was working at the Buffalo Bill Museum in Cody. Plaintiff has also recently taken a part-time position at Michaels. In short, the court finds that Plaintiff has the ability to seek and obtain appropriate employment, despite the limitations imposed by her medical conditions.

[¶7]   Specifically regarding alimony, the court stated as follows:

Plaintiff has requested that this court award her monthly alimony of $3,500.00 for a period of five (5) years. Applying legal standards …, the court does not find in the record a justification for awarding that amount of alimony for such a long duration. …[T]he court finds that Plaintiff has the ability to find employment that would accommodate her medical limitations. Furthermore, … [Plaintiff] has not exercised appropriate diligence to secure employment since filing her divorce complaint. The court also finds that it is not "just and equitable" under the facts and circumstances of this case to order Defendant to continue to pay alimony in the amount of $3,000 a month, as he has been doing since March of 2014. [The Wyoming] Supreme Court has made clear that an award of marital property is a preferable substitute [to] alimony, and that "one spouse should not have a perpetual claim on the earnings of the other; that divorce, insofar as possible should sever the ties of the parties and they should begin to start their lives anew." *Grosskopf v. Grosskopf,* 677 P2d 814, 821 (Wyo. 1984).

In this case, the court has awarded [Wife] half of the equity in the marital home as well as half of [Husband's] retirement account. The court believes this award will assist [Wife] in her financial transition in the wake of this divorce. Furthermore, the court notes that [Husband] is presently working four different jobs; drives a fifteen-year old vehicle; and is living in a mobile home. [Husband] should not be required to continue to work four jobs to provide alimony to [Wife] who has the ability to work.

3

The court further ordered a limited and reduced alimony payment of $1,000.00 per month for three months beginning January 1, 2015. This appeal followed.

**DISCUSSION**

[¶8]    Wife argues that the district court abused its discretion in not awarding her alimony. She submits that her alimony request was reasonable because she placed a five-year time limit on the request. She points to Husband's gross income of $8,100.00 per month and claims that because he has the ability to pay, alimony is proper. Wife also challenges the district court's property division, and argues with its finding that she is able to work. She claims she is *de facto* unemployable, and faults the court for criticizing her treatment of her PTSD with acupuncture.

[¶9]    Husband counters that the district court did not abuse its discretion in deciding alimony and submits that he does not have the ability to pay. Husband points to his living in a mobile home and driving an old car, and working several jobs with long hours. Husband also argues that Wife does not need alimony and that she has the skills and education to be employable in at least two fields. Husband also argues that Wife has failed to paint the complete picture and that the property division was fair.

[¶10]  We have said regarding alimony,

> The purpose of alimony is to provide a post-divorce substitute for the support provided to a spouse during the marriage. [*Johnson v. Johnson*, 11 P.3d 948 at 951 (Wyo. 2000)]. It is for the support and maintenance of a former spouse who is unable to adequately provide for himself or herself. *Id.* An award of property is a preferable modern substitute for alimony. *Id.* While in some cases alimony may be a necessity, "under ordinary circumstances it should be recognized that one spouse should not have a perpetual claim on the earnings of the other; that divorce, insofar as possible should sever the ties of the parties and they should begin to start their lives anew." *Grosskopf v. Grosskopf*, 677 P.2d 814, 821 (Wyo. 1984). When alimony is awarded in the absence of a stipulated settlement between the parties, the record must reflect some evidence that alimony, with its special features, is needed. *Johnson*, 11 P.3d at 951. If the intent is to adjust the equities between the parties at the time of the divorce, property division, which may encompass a series of payments, is the preferable method. *Id.*

4

*Stevens v. Stevens*, 2014 WY 23, ¶ 15, 318 P.3d 802, 807-808 (Wyo. 2014). We are also guided by Wyo. Stat. Ann. § 20-2-114 (LexisNexis 2015) in alimony cases:

> § 20-2-114. **Disposition of property to be equitable; factors; alimony generally.**
>
> (a) ... [I]n granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children. The court may decree to either party reasonable alimony out of the estate of the other having regard for the other's ability to pay and may order so much of the other's real estate or the rents and profits thereof as is necessary be assigned and set out to either party for life, or may decree a specific sum be paid by either party.

We applied these tenets in *Stevens*, to which Wife compares the instant case and urges this Court to recognize the similarities and award temporary alimony.

[¶11] In *Stevens*, father took issue with the district court's alimony award to mother, who maintained a tax and bookkeeping practice. This Court noted the large difference in the parties' incomes–father earned over $20,000.00/month and mother earned less than $1,000.00/month. Ultimately, this Court approved the trial court's highly tailored alimony award:

> … [I]t is entirely within the discretion of the trial court to award alimony during a transition period wherein the party requesting alimony may gain special skills, education, **or experience** to enable the party to raise his or her earning capacity. Because of Mother's dedication as a stay at home mom the period allowed for alimony [five years] allows her to regain her ground as an employable CPA. Last but not least, of course, is Father's ability to pay. Father's monthly income at the time of trial was $23,670.22 compared to Mother's $943.41. Trial testimony proved Father had the ability to pay…
>
> Based upon the earning potential of each party we conclude that $2,000.00 per month for five years is not beyond the bounds of reason.

*Stevens*, ¶¶ 16-17, 318 P.3d at 808 (emphasis in original).

[¶12] We find the facts of *Stevens* and this case dissimilar. First, we look to the ability of the payor spouse, in this instance, Husband. "[I]n determining whether a spouse is entitled to be awarded alimony, the trial court considers objective criteria including the ability of the payor spouse to pay and the necessity of support of the payee." *Johnson v. Johnson*, 11 P.3d 948, 950 (Wyo. 2000) (quoting *Neville v. Neville*, 8 P.3d 1072, 1073 (Wyo. 2000)). In *Stevens*, the discrepancy between the parties' incomes was over $20,000.00 per month. Here, the difference is about $8,000.00 per month and during the fifteen months leading up to the divorce, Husband paid $91,230.00 toward the parties' joint financial obligations, as well as paying Wife temporary alimony of $3,000.00 per month. In order to make ends meet, Husband lived in a mobile home, drove a fifteen-year-old car and worked four jobs. He worked six days per week, resulting in 60-70 hour work weeks. Scaling backing to his one main job, Husband grossed $8,100.00 per month and testified his monthly expenses were $7,500.00.

[¶13] Taking Husband's ability to pay into account, we turn to the necessity of the receiving spouse in this case. Indeed, alimony is "for the support and maintenance of a former spouse who is unable to adequately provide for himself or herself." *Stevens*, ¶ 15, 318 P.3d at 807. Wife contends that she is "*de facto*" unemployable and cites to a worker's compensation case in support of her argument. While we appreciate Wife's attempt to cite pertinent case law, a worker's compensation case is inapplicable in this instance. That said, we will attend to Wife's contention that she is "*de facto*" unemployable.

[¶14] At trial, Wife presented two witnesses who testified as to her medical conditions. First, Wife's psychologist testified that Wife has PTSD, but that "can be managed very well." The psychologist also testified that it was his belief that she will continue to improve and is capable of working given the right circumstances. He also testified as follows:

> Q: Now, tell me what you mean. Could she – talk about employment. Could she work? What kind of employment could she do, if any?
>
> A: You know, Tracey's a bright woman. I think she's – you know, it isn't about intellectual ability. It is about emotional capabilities and feelings of trust or distrust in the world. I could think if the job was very isolative, it didn't involve the public, if it was, you know, based out of her home would be ideal or based out of a place she thought was safe, I think she could do the work.
>   I think also because of some current concentration, memory problems, I think if it was extremely time limited or

6

time-intensified requirements, she would have difficulty with
that. But if it wasn't, I think she could work in a very quiet,
very predictable environment.

Not only was there testimony that Wife could conceivably work, evidence was presented at trial showing that Wife previously earned her Master Herbalist degree as well as a reflexology certificate. Wife's experience also included earning college credit and development of a website.

[¶15] Wife counters Husband's above points by again comparing her case to *Stevens*. However, we conclude that there are differences in *Stevens* such that we cannot conclude there was an abuse of discretion in this case. In *Stevens*, mother attempted and failed to find employment, compared to no attempt by Wife to find employment in her related field. Also in *Stevens*, mother was still caring for two young children, whereas here, the children have left the home. Though Wife asserts that she was not able to build a career during the marriage, as was the case in *Stevens*, we point out that her schooling was done during the marriage. While these differences may seem nominal, the trial court is in the best position to assess the witnesses' credibility and weigh their testimony. *Raymond v. Raymond*, 956 P.2d 329, 332 (Wyo. 1998). We, therefore, give considerable deference to its findings. *Id*.

[¶16] Finally, our conclusion that the district court did not abuse its discretion in not awarding alimony is bolstered by the district court's division of property. The court equally divided the marital home equity and also gave Wife half of Husband's retirement account. The court also awarded to Wife the newer vehicle of the two at issue. In doing so, the trial court heeded this Court's previous statement that while in some cases "alimony [may be] a necessity, ... under ordinary circumstances it should be recognized that one spouse should not have a perpetual claim on the earnings of the other; that divorce, insofar as possible should sever the ties of the parties and they should begin to start their lives anew." *Grosskopf*, 677 P.2d at 821.

## CONCLUSION

[¶17] The district court is affirmed.